EASTERN DIST.

*May*, 1837.

FERRARI'S AD-
MINISTRATRIX
*vs.*
LAMBETH ET AL.

It is, therefore, ordered, adjudged and decreed, that the judgment of the District Court be affirmed, with costs.

=======

FERRARI'S ADMINISTRATRIX *vs.* LAMBETH ET AL.

APPEAL FROM THE PARISH COURT FOR THE PARISH AND CITY OF NEW-ORLEANS.

A woman is incapable of exercising any civil functions, except those especially declared by law ; So, a woman cannot be appointed curatrix of the estate of an absentee.

It does not follow, that because a woman cannot be appointed curatrix, she cannot as a female beneficiary heir, have the administration of the succession of her ancestor.

But a court of ordinary jurisdiction cannot inquire into the correctness and validity of the appointment of an administratrix, collaterally. It has no authority to review the judgments of the Probate Court, conferring such appointment.

Where the evidence shows simulation in certain sales from the first vendor to his vendee, yet, when the purchaser from this vendee was ignorant of the simulation, and the sale to him was a real one, it will be valid.

In an action or claim for the rescission of a sale on the score of simulation, it is essentially necessary to put the party *in morâ* previous to the demand for a rescission.

An administratrix cannot be legally called on to pay any debt of the succession she administers, except before the Probate Court; So, she is not bound to tender the balance of the price of a tract of land, to avoid being put *in morâ* by the vendor's plea for a rescission of the sale.

EASTERN DIST,
May, 1837.

FERRARI'S AD-
MINISTRATRIX
vs.
LAMBETH ET AL.

This is a petitory action. The plaintiff as the administratrix of J. B. Ferrari, sues to recover a square of ground in the rear of Faubourg, St. Mary, which the defendants purchased the 8th April, 1833, at the probate sale of the widow Nicholas Roche's succession, but which in fact is alleged to have belonged, at the time, and now, to the succession administered by the plaintiff.

The defendants, John Rice, Wm. M. Lambeth, P. Caillou and Omer Lauve, pleaded the general issue, and denied specially the capacity and authority of the administratrix to sue, or that she and her sisters mentioned in the petition were the legitimate children and heirs of J. B. Ferrari, deceased.

They call their vendors, the heirs and widow of Nicholas Roche in warranty. The warrantors appeared and pleaded in substance the same pleas.

The defendants pray that if the sale to Ferrari by Roche should not be declared simulated and the plaintiff recover, that the purchase money still due from them, (five thousand dollars,) may be decreed to them in diminution of damages.

The warrantors pray that if the plea of simulation of the sale from Roche to Ferrari be overruled, that it be rescinded for the non-payment of the price, and if the rescission of this sale be refused, that they have judgment against Ferrari's estate for the price yet unpaid, with interest.

The facts of the case show that in 1807, this square of ground was sold by John Gravier to Nicholas Roche, by notarial act for four thousand eight hundred dollars, cash.

This sale is shown to have been simulated and made to secure advances of money made by Roche to Gravier at usurious interest, and to conceal the property of the latter.

In January, 1810, Gravier acting on behalf of Roche, leased this same square, with a house and garden on it, to J. B. Ferrari, for one year, for three hundred and fifty dollars.

On the 18th January, 1811, Roche sold the square to Ferrari, for six thousand six hundred and fifty dollars, of which six hundred and fifty dollars were paid in cash, the balance on a credit. On the 29th February, 1812, Ferrari paid the first instalment of one thousand five hundred dollars,

EASTERN DIST.
May, 1837.

FERRARI'S AD-
MINISTRATRIX
vs.
LAMBETH ET AL.

for which Roche gave his receipt, specifying it to be on account of this square.

This sale was made by Roche for Gravier's account, and with his consent.

In February, 1813, Ferrari applied for a respite, and put Roche on his bilan as a creditor for the balance due on account of this property, and enumerated this square among his property as purchased from Roche.

In March, 1814, Ferrari died on this property where he had been living with his family since 1810. The widow renounced, but the daughters (including plaintiff,) accepted the succession with benefit of inventory. At the probate sale of the estate, this square was withdrawn as not bringing the amount of the appraisement.

There is no evidence that Ferrari's heirs ever did any thing afterwards, or that their title was ever disturbed by any proceedings against them. The widow and some of the heirs left the country in 1815.

In June, 1815, Roche wrote Gravier, requesting him to institute proceedings against the widow Ferrari, to force her to abandon the property which he had sold her husband, and in 1816, informed Gravier that the sheriff had applied to him for the taxes due by Ferrari's estate, on this property, and that he advised the sheriff to seize and sell it, which was declined.

Towards the close of 1818, Roche died; Gravier and his executrix had a settlement, in which he became debtor for the sum of six thousand one hundred and ninety-two dollars, promised to pay this balance in one year, and mortgaged four pieces of property, the title of which was then, or had been in Roche, including the square of ground in question. This settlement is explained by a memorandum made by Gravier at the time.

Gravier failed to pay this mortgaged debt, and all the property was seized and sold, and bid in by Madame Roche. At the probate sale of her succession, the square of ground now in contest, was sold in lots, and purchased by the defendants.

EASTERN DIST.    Upon the evidence of the case the jury returned a verdict
· *May*, 1837.    for the plaintiffs, also requiring them to pay the defendants
─────────    for their improvements; likewise in favor of the defendants
FERRARI'S AD-    against Roche's heirs in warranty, the amount of the pur-
MINISTRATRIX
*vs.*    chase money.    From ·judgment confirming this verdict, the
LAMBETH ET AL.    defendants and warrantors appealed.

    *L. Janin*, for the plaintiffs, maintained that the appoint-
ment of the plaintiff as administratrix, was regular and in
due form, and that her letters of administration make full
proof of her authority until set aside.    2 *Louisiana Reports,*
250.    Her right to institute this suit results from the Louisi-
ana Code, articles 1042 and 1146.    Whoever may be the
heirs, the administratrix has a right to represent the estate. .
It was therefore unnecessary to inquire into the heirship of
Ferrari's daughters, although it is fully proved by the
evidence.

    2. Ferrari was ignorant of the foundation of Gravier's sale
to .Roche.    The evidence proves that Roche and Gravier
kept their private transactions closely concealed, and even if
he had been perfectly aware of it, it is a sufficient answer,
that Roche sold to Ferrari with Gravier's consent and for his
account.

    3. The three pleas of the defendants and warrantors, viz :
simulation, rescission of the sale, and payment of the price, are
contradictory.    The Parish Court correctly ordered them, on
the motion of the plaintiff, to elect one of these pleas, but the
court erred by allowing the parties, defendants, to make
separate elections, and to choose each a different plea.    By
this evasion they have really had the illegitimate advantage
of contradictory pleas.    *Code of Practice,* 149, 152.    8 *Martin,*
493.    3 *Martin, N. S.* 76.    Thus the defendants elected the
plea of simulation, while the warrantors elected the plea of
rescission, and for the payment of the price.    These last men-
tioned pleas of the warrantors admit the reality of the sale,
and tend to set it aside *now*.    In other words, they admit that
at the moment of the sale to the defendants, the Ferraris had
the title to this property, not Madame Roche's heirs.    The

defendants are bound by the admissions of their warrantors,
they only acquire the title of Roche's heirs, and if these
acknowledge that they had no title, it is not for the
defendants to say that they had any.

4. The plea of rescission is inadmissible in this case, because the sale was on a credit, and possession delivered. *Goforth* vs. *His Creditors*, 6 *Martin*, 520.

A suit for the rescission of a sale must always be preceded by a suit for the price, and can be resorted to only after the latter has proved ineffectual. *Old Code, page* 360, *articles* 87, 88, *Louisiana Code, article* 2541. Or at least, a judicial demand must be made for the price, and subsidiarily only for the rescission, if the price is not paid within the time fixed by the judgment. 10 *Toullier*, 260. 3 *Delvincourt*, 78, *and notes.*

The purchaser must be put in default, Civil Code, 2041-2, 1906, and this can be done by the vendor only, if he is ready and willing to perform his part of the contract, and offers to do so. But if he, at the same time, withholds the property under color of a title adverse to that which he had transferred to the vendee, and threatens the vendee with rescission, his demand will certainly not be listened to. 2 *Troplong, vente* 76.

A rescission cannot be ordered when the vendee is disturbed or dispossessed, as in this case, by the act of the vendor or his heirs.

5. A vendor who is not willing to receive the price, complains with bad grace of the non-payment of it. Had a demand of payment been seriously made in this case, the vendees would have been obliged to comply with it, only if the demand had been for the amount really due, and not when more was demanded than was really due, as in this case. Again, the rescission could be claimed only if the vendor offered to return what was already paid. These irreconcilable perplexities result necessarily from the contradictory pleas of the defendants. Roche's heirs cannot claim the payment of the price which it is quite certain never was due to their ancestor, but to Gravier.

14

EASTERN DIST.
*May,* 1837.

FERRARI'S AD-
MINISTRATRIX
*vs.*
LAMBETH ET AL.

Ferrari's estate is administered under the supervision of the Court of Probates, and the payment of its debts can be required only in the manner prescribed by law.  *Code of Practice, article* 980.

6. The judge of the Parish Court decided correctly, that his court was without jurisdiction, on the claim for the balance of the price.   For this is a debt by a succession, and can therefore be recovered only in the Court of Probates.  *Code of Practice, article* 924, *No.* 13.   3 *Martin, N. S.* 626.

*Hoffman, Peirce* and *Strawbridge,* for the defendants, contended that the judge erred in refusing to charge the jury, that when the purchaser fails to pay the price, the vendor, or those succeeding to his rights, may have the sale rescinded.

2. In this case Ferrari having failed to pay the principal part of the purchase money to Roche, the defendant, in possession, Roche's heirs called in warranty, should be allowed to claim a rescission of the sale, in bar of the plaintiff's right to recover the property.

3. The main part of the purchase money being due to Roche's heirs, they have an undoubted right to claim a rescission of the sale, when their vendees, to whom they are bound in warranty, are sued for the property.

4. If the sale by N. Roche, in his life time, was simulated, as appears from the evidence, the defendants have still a stronger claim to its rescission.

5. There being a balance due for the price, although it might be necessary to pursue Ferrari's estate in the Probate Court; yet, where the property is claimed, and the jurisdiction of the District Court attaches, this demand may be claimed in praying for a rescission of the sale.   The jurisdiction will attach to this matter as an incidental demand.

6. It is next assumed that the defendants' prayer for a rescission of the sale, cannot be acted on, because the plaintiffs were not put *in morâ.*   This need not be done by a separate suit, for it is expressly authorized in the principal suit, which was sufficient.   7 *Louisiana Reports,* 193.

EASTERN DIST.
*May*, 1837.

FERRARI'S AD-
MINISTRATRIX
*vs.*
LAMBETH ET AL.

*D. Seghers*, for the warrantors, first contended that the plaintiff, as administratrix of Ferrari's succession, has not the *capacity* to maintain this suit. Women are forbidden to exercise any *civil functions* except in cases expressly authorized by law. The exercise of a right or authority over the property or estate of another, is a civil function. It has been expressly decided that a woman cannot be *curator* of an absentee. *Caraby* vs. *Caraby*, 7 *Martin, N. S*. 466.

2. Roche's heirs are the sellers or vendors of this property to Ferrari. If the buyer fails to pay the price, the seller may sue for the rescission of the sale. In this case it is claimed as an exception where they are sued for the property. He who has a right in action, has one more evident in exception, in order to preserve his rights. The endorser who pays the note for the purchase of a slave, is subrogated to the vendor's right, and may claim a rescission of the sale. *Civil Code*, 360, *article* 86. *Code of Practice*, 20. 2 *Martin, N. S.*, 158. 4 *Ibid.*, 499. 1 *Ibid.*, 468.

3. The plaintiffs were put in default by the exception pleaded in the answers, claiming a rescission of the sale. This is equivalent to a demand by commencement of a suit. *Louisiana Code, article* 1905. *Code Napoleon*, 1184, 1656. 16 *Duranton*, 356 *to* 360, *No.* 361 *to* 374.

*Martin, J.*, delivered the opinion of the court.

This is a petitiory action, and the defendants are appellants from the judgment which decrees the premises to the plaintiff.

The facts of the case are these ; both parties admit the premises to have once been the property of Gravier. The plaintiffs claim title in the deceased, whose beneficiary heir and administratrix she is, under a conveyance from Gravier to Roche, and from Roche to Ferrari. The defendants claim under a probate sale of the succession of Roche's widow They show that the premises were mortgaged by Graviei to her. That she provoked a sale of them, on an order of seizure obtained on her mortgage, at which she became the purchaser.

FERRARI'S AD-
MINISTRATRIX
*vs.*
LAMBETH ET AL.

A woman is incapable of exercising any civil functions, except those especially declared by law: So, a woman cannot be appointed curatrix of the estate of an absentee.

It does not follow, that because a woman cannot be appointed curatrix, she cannot, as a female beneficiary heir, have the administration of the succession of her ancestor.

, But a court of ordinary jurisdiction cannot inquire into the correctness and validity of the appointment of an administratrix, collaterally. It has no authority to review the judgments of the Probate Court, conferring such appointment.

Where the evidence shows simulation in certain sales from the first vendor to his vendee, yet, when the purchaser from this vendee was ignorant of the simulation, and the sale to him was a real one, it will be valid.

In an action or claim for the rescission of a sale, on the score of

They called in warranty the heirs of the widow, who are also those of Roche.

An objection was made to the right of the plaintiff of standing in judgment as administratrix of the estate of her ancestor; it being contended, that the administration could not be granted to a female, and the case of Carraby vs. Carraby, 7 Martin, N. S., 466, is relied on, in which we reversed the judgment of the Court of Probates, appointing a woman *curatrix* to an absentee. It does not follow that because a curatrix cannot be appointed to such a person, a female beneficiary heir cannot have the administration of the succession of her ancestor. This, however, could not be inquired into by the Parish Court, which was without authority to review the judgment of the Court of Probates, granting the administration to the plaintiff. The case of Carraby *vs.* Carraby was that of a direct appeal to us from the judgment of *the Court of Probates*, appointing *the curatrix*. The objection to the plaintiff's right to the administration was therefore correctly overruled.

On the merits, the defence was, that the conveyances from Gravier to Roche, and from him to Ferrari, were simulated; and that if the simulation was not decreed, the sale to Ferrari ought to be rescinded, because he had failed to pay the last instalment of the price. It appears to us, the defence was correctly disregarded. Evidence has indeed been introduced, from which it may be inferred, that Roche was an agent of Gravier, making, to his principal, advances of money, for the security of which the latter made conveyances of land, which were to be rescinded on his paying any balance which he might appear to owe from time to time, on a settlement of accounts. But there is not the least tittle of evidence that Ferrari was acquainted with this circumstance, nor that the conveyance from Roche to him was not a real one. The rescission of the sale was properly overruled, on the ground of the absence of any evidence of the plaintiff having been put *in morâ*, a circumstance which must essentially precede a demand for the rescission of a sale. It has been contended that the party was put *in morâ* by the plea claiming the

rescission of the sale, and the absence of any tender on her part of the balance of the price due. To this it has been correctly objected, that those who have succeeded to the rights of Ferrari's vendor, have manifested an unwillingness to receive this balance, and consent to a rescission, if they could succeed in repelling the plaintiff's claim on the score of simulation, or any other.

It is doubtful whether an administrator who manages an estate under directions of the Court of Probates, without whose authority he cannot make any disbursement, may be legally called on out of court for the payment of any sum due by the deceased, whose succession he administers; if the call cannot be legally made, it cannot have any legal effect. In a very late case, we held, that the curator of the deceased person who was the maker of a promissory note, need not be called on before the expiration of the year, in order to charge the endorser, the curator not being legally bound or authorized to pay. The plaintiff in this case, as administratrix, cannot be called upon to pay any debt of the succession, except before the Court of Probates.

It is, therefore, ordered, adjudged and decreed, that the judgment of the Parish Court be affirmed, with costs.

*Eastern Dist.*
*May, 1837.*

An administratrix cannot be legally called on to pay any debt of the succession she administers, except before the Probate Court: So, she is not bound to tender the balance of the price of a tract of land, to avoid being put in *morâ* by the vendor's plea for a rescission of the sale.