### John H. Hewitt v. Squire O. Bridewell.

One who seeks equity, must do equity.

Appeal from the District Court of Madison, *Curry*, J.

Garland, J.   The petitioner claims a tract of land of about seventy-seven acres.   His title is founded on a certificate of purchase from the United States in the name of Margaret Earl, and a sale from her to him, written on the back of the certificate, which transfers all her rights, and directs that a patent be issued in his name, which sale was afterwards ratified by the vendor, or rather another sale was made to the plaintiff by an act under private signature.   The right of Margaret Earl was to a *float*, under the preemption law of June 19, 1834.   The transfer and sale to the plain-

tiff was made after her rights were established, and her title from the government vested.

The defendant also claims title by various mesne conveyances from Margaret Earl. The plaintiff prays for damages for the injury to his property and for rents and profits, and the defendant for the improvements and additional value given to the land by the labor bestowed on it, asserting a possession in good faith. The defendant also claims the title which Hewitt has obtained, saying it was procured for the benefit of Seaton, one of the warrantors, the plaintiff having represented himself to Margaret Earl as his agent. The facts are, that, in the year 1834, Seaton, being in want of a title to enable him to get possession of a lot of public land near him on the Roundaway bayou, applied to the plaintiff to procure for him a *float*, under the pre-emption law passed by Congress on the 19th of June, 1834, for which Seaton was to pay $500 to the plaintiff, " and clear the claim or *float*, out of the Public Land Office at Monroe—two hundred dollars to said Hewitt, and one hundred dollars to pay for the location of the floating claim, to be paid at Monroe, as soon as expedient, and the other three hundred dollars to be paid on or before the 15th of January next," meaning in the year 1835. This contract was made on the 2d December, 1834, and on the next day the parties went together to the residence of Margaret Earl; who was entitled to such a claim, and which Hewitt had previously contracted to purchase. At his instance, and by an act which he signs as a witness, Margaret Earl made a sale to Seaton of the lot of land, describing it as having been made for the sum of $100. There is no condition in this sale ; but it is stated under what law she claims, and it avers that the evidence of her rights is deposited in the Land Office. Seaton took possession of the land, and sold it ; and from his vendee, Foster, it has passed to the present defendant.

Why the land was not paid for at the Land Office until January, 1838, is not explained ; nor does it fully appear, what occurred between the plaintiff and Seaton previous to that time. It does not appear that the latter advanced the one hundred dollars to pay for the land at the Land Office, nor that he paid any portion of the five hundred dollars he had agreed to give the plaintiff. Sea-

ton alleges that he has made payments to the plaintiff. The latter denies it, and there is no proof about it, except that during the summer or autumn of the year 1837, the plaintiff endeavored to induce Margaret Earl to make a transfer to him, on the ground that Seaton had not complied with his agreement with him, which she refused. Finally, the plaintiff, at the last mentioned date, got Margaret Earl to go with him to the Land Office at Monroe, where he paid for the land, and the receipt or certificate of purchase was issued in her name, and immediately after a transfer of it was made to him on the back of the paper. It was attested by two witnesses, who were in the Land Office, one of whom swears that Margaret Earl appeared to do it willingly, and seemed to be satisfied; but the evidence shows that the plaintiff had previously told her, that he only wished her to make the transfer to him that he might complete his contract with Seaton, and that the land was for him. This she no doubt believed, and in fact manifested considerable anxiety that Seaton should have the land. Sometime after this, it appears, that the plaintiff, Seaton, and Foster were at Monroe, when the subject was again discussed among them. Copley says that, at that time, all the parties were in his office; that Seaton and Foster knew then that the plaintiff had a transfer of the certificate, and that the former did not pretend that he had paid the sums promised by him; and Hopkins proves, that, afterwards, from conversations he had with Seaton, he was induced to believe that the money was not paid, and, further, that Foster expressed great anxiety to purchase the plaintiff's rights, and re quested him to recommend certain persons to the plaintiff as being good security on the notes which he was to give him, which the witness declined to do, and the negotiation terminated.

After the interview at Monroe, which took place in March, 1838, there seems to have been a race between the plaintiff and Seaton, who should again see Margaret Earl first. The former was the victor in this contest, having, as he stated to a witness, travelled a great part of the night, and swam a considerable river to get ahead of his rival. On the 28th of March, 1838, he presented himself to Margaret Earl, with a deed written out, again conveying the land to him, but telling her at the same time that it was for Seaton, as she swears, and as one of the witnesses to the

deed also testifies.  A short time after this deed was executed, Seaton reached Margaret Earl's residence, and finding that his competitor had got another deed, he persuaded her to go before the Parish Judge of Madison, before whom she made a declaration of the manner in which she had been imposed upon, and declared her intention of adhering to the sale she had made to him in 1834, which she ratified in all its parts.  There was a judgment in the District Court for the defendant, and the plaintiff has appealed.

On the trial, the plaintiff took various bills of exception to the opinion of the judge refusing to admit or to exclude testimony. One was to his refusal to admit in evidence, two letters from Seaton to the plaintiff, dated in September, 1835, as irrelevant, and because one of them was in some degree mutilated.  Another was to his refusal to order the defendant, or his warrantors, particularly Seaton, to produce in court a duplicate of the alleged contract between Seaton and the plaintiff, made in December, 1834.  We think that the judge erred in both instances ; but as the letters, and what purports to be a copy of the contract, are in the record, and the warrantor, Seaton, in his answer substantially admits it, we have considered them.  Another bill of exceptions was taken to the admission of the deposition of Margaret Earl in evidence, on the ground that she was interested.  We think the judge did not err.  If she was bound, as the warrantor of both parties, the warrantor Seaton has released her from all liability, and it is her interest now to testify in favor of the plaintiff ; but he objects, as her testimony is opposed to him.

We think there cannot be a doubt that Margaret Earl was imposed on by the plaintiff, and induced to sign the transfer on the back of the receipt or certificate from the Land Office, from the belief that it was for the benefit of Seaton, and that it was with the same belief that she signed the deed to the plaintiff on the 28th of March, 1838.  He represented himself as the agent of Seaton, or at any rate as acting in such a manner as would enable him to complete the agreement entered into between all the parties. This he has not done.

We think the legal title to the land is by the transfers vested in the plaintiff ; but that he obtained it by representing himself as the

agent of Seaton, or as acting with a view to get the title to the land in order to convey it to him. By these pretences the title was procured, and Seaton has thereby acquired an equitable right to it; but he cannot compel the plaintiff to make a conveyance to him, until he shall himself comply with the obligations he has incurred. He who seeks equity, must himself practice it; and the defendant Seaton asks us, with rather a bad grace to divest the plaintiff of his title, and give effect to his equitable right, without complying with his obligation to pay the price he was to give. We are of opinion that justice requires that this case should be remanded for a new trial.

The judgment of the District Court is therefore annulled, and the case remanded for a new trial, with directions to the judge to conform to the opinions herein expressed, in relation to the admission of testimony, and in other respects to proceed according to law ; the appellee paying the costs of this appeal.

*Copley*, for the appellant.

*Stockton* and *Dunlap*, for the defendant.