## Jamison & McIntosh v. L. C. Duncan.

The Art. 671 C. C. being derogatory of the right of property must be strictly construed. The right granted thereby to the first proprietor of lands in cities, who builds, to take possession of the land of his neighbor for the foundation of his building, must be confined to the side walls, and cannot prevent the latter, who afterwards builds, from occupying the whole front of his land ; but he has no right to avail himself of the side wall before paying half the cost of its execution.

Damages refused to a builder against whom an injunction has been sued out, where the whole foundation of his claim for damages is a supposed hindrance thrown in his way in executing a building contract which confessedly required for its execution the use of a side wall erected by the plaintiff in the injunction, and for which he has not been compensated, where the party against whom damages are sought to be recovered, has resorted to legal means to maintain what he conceives in good faith to be his just rights.

The courts should restrain within reasonable bounds, the infliction of pecuniary penalties against a party who has only attempted to pursue what he in good faith supposed to be his legal rights, according to the forms of law.

APPEAL from the Second District Court of New Orleans, *Morgan*, J. *Durant & Horner*, for plaintiffs. *G. B. Duncan*, *C. Roselius*, and *J. McConnell*, for defendant and appellant.

BUCHANAN, J. This suit has grown out of that of *Ducan* v. *Labouisse* and others, reported in 9th Annual.

Its history may be stated as follows : *Lucius C. Duncan*, the defendant, being the owner of a lot of ground on Carondelet street, in the city of New Orleans, on which he erected a house, availed himself of the right given him by the Art. 671 of the Code, to put one-half of the side-wall of his house on a lot adjoining, which was then vacant. Subsequently, *Mr. Labouisse*, the owner of the vacant lot, intending to improve the same, made a contract with *Jamison & McIntosh*, the plaintiffs, by which the latter agreed to erect for *Labouisse*, for a price stipulated, a five story store, of which the depth from the street, height of stories, size of timbers, openings, slating, copper and tin works, flooring, partitions, plastering, stairways, marble mantels, flagging, water-works, and all other works and materials, whether specified or not, were to be of the same quality and finish as the adjoining store (above mentioned), belonging to *Lucius C. Duncan*, with some exceptions specified ; of which one was, that the entire front of the store was to be of the best Quincy granite, built and finished off precisely in the same manner as another store indicated.

Now, the store of *Mr. Duncan* was supported in front upon cast iron columns of which one faced the side wall, on the side towards *Labouisse's* lot ; one-half of said column standing in front of the portion of the side wall which had been built on *Labouisse's* land.

In the execution of the contract with *Labouisse*, *Jamison & McIntosh* proceeded to make use of the side wall erected by *Duncan*, as a wall in common, without having made the previous indemnification required by Art. 672 of the Code, in order to render it such. They also commenced cutting the cast iron column at the corner of the wall in two, perpendicularly, for the purpose of removing the one-half thereof, and replacing the half thus removed by a column of Quincy granite, in conformity with their contract aforesaid. At this stage of the proceedings, *Duncan* commenced suit against *Labouisse* and *Jamison & McIntosh*, alleging that the iron column in question had been erected

*99*

by express agreement with *Labouisse*, and that the half of the side wall, erected by *Duncan*, had not been paid for by *Labouisse*. The petition concluded with a prayer for an injunction to prevent *Labouisse* and *Jamison & McIntosh*, "from proceeding to the injury or destruction of the said wall or any part thereof." A writ of injunction issued upon this petition, commanding *Jamison & McIntosh* and *Labouisse* "not to injure the iron column of the wall of the building."

Judgment was rendered in that suit in the District Court, decreeing "that the injunction so far as it prohibits the use of the division wall between the properties of the plaintiff and the defendant *Labouisse*, be maintained, and that the defendants be prohibited from the further construction of any works upon said wall until it shall have been made a wall in common, as provided by law; and that as respects the cutting of the iron pillar in front of said wall, up to the division line of the two properties, that the injunction be dissolved." From this judgment a suspensive appeal was taken to this court, and the judgment of the District Court was affirmed, "without prejudice to *Duncan's* right of action for damages for the breach of *Labouisse* of the alleged parol agreement between *Labouisse* and *Duncan*, mentioned in the petition." 9 An, 49 and 607.

It appears that *Jamison & McIntosh* suspended all work upon the building from the time that the injunction was served upon them (April, 1853), until after the judgment of the Supreme Court was rendered (January, 1854); and have brought the present action for a thousand dollars and upwards, damages alleged to have been incurred by the issuing of the injunction aforesaid, and stated in a bill of particulars annexed to the petition under the heads:

1st. Of interest upon the installments of the price of contract, while the building was suspended.

2d. Of increase in the price of building materials between the periods of suspension and resumption of the work.

3d. Of extra labor in removing granite.

4th. Of lawyer's fees paid in defending the injunction suit.

The District Court, acting upon the evidence adduced upon these different items (except the last, upon which there was no proof), has given judgment in favor of plaintiffs for six hundred and ninety-eight dollars and twenty-five cents, from which the defendant appeals.

It is manifest that the elements of damage which make up the judgment herein, are erroneous. There was no reason for the suspension of the work upon the building contract, except the volition of plaintiffs. The writ of injunction served upon them, merely required of them not to injure or destroy the iron column. And the evidence, even of plaintiffs' witnesses, proves that the building might have been completed according to contract, without disobedience to this injunction. The only consequence would have been, that as thus completed, the corner of *Labouisse's* front wall adjoining *Duncan*, would have been supported by an iron column instead of a granite one, which the contract called for. It is proved by several witnesses, and the statement is not contradicted, that the iron column would have supported the additional weight. Supposing that the building had been thus completed, the evidence shows us that, upon the dissolution of the injunction, the iron column, or the half of it, could have been removed without difficulty or danger, and a granite column substituted in its place. The column to be substituted would necessarily have been of the same height as the one removed, for we have seen that

the building contract refers to *Duncan's* store, as the guide for the height of the stories. The extra cost of this operation is all that the plaintiffs could have been properly entitled to under the evidence.

Parties are too prone to exaggerate their own damages; and there is nothing which more frequently requires the careful attention of the courts, than the restraining within reasonable bounds the infliction of pecuniary penalties in civil suits, for acts of commission or omission. And this attention is the more required, when, as in the present case, a party is sued for damages for having attempted to pursue what he supposed, in good faith, to be his legal rights, according to the forms of law.

In the case of *Duncan* v. *Labouisse,* this court, for the first time, interpreted the law of walls in common, in a very important particular. Basing ourselves upon the doctrine of one of the most eminent of French commentators (Toullier), we held that the Article 671 of our Code, was derogatory of the right of property, and should therefore be strictly construed; and that the right of the first proprietor of land in cities, who builds, to take possession of the land of his neighbor for the foundation of his building, must be strictly confined to the side walls, and cannot prevent his neighbor, who afterwards builds, from occupying the whole front of his land, as shown by his titles, in such a manner as his taste may dictate. That this question was by no means unattended with difficulty, in its application to this case at least, is proved by the fact, that two of the five Judges of this court dissented from the judgment rendered.

And it is proper that the regard for the right of property, which has dictated the strictness of our rule as to one of the parties, should also have effect in construing the rights of the other.

Accordingly, it was held by the judgment of the District Court in the case of *Duncan* v. *Labouisse,* which we affirmed, that those plaintiffs had no right to make use of the side wall which *Duncan* had erected at his sole expense, before paying *Duncan* the half of the cost of erecting the same; and the evidence shows that the plaintiffs paid nothing towards the cost of the said wall, until after judgment of the District Court pronounced in the injunction suit. Yet the whole foundation of the present claim for damages is a supposed hindrance thrown in the way of plaintiffs in executing a building contract, which confessedly required for its execution the use of the side wall thus erected by the defendant.

He who seeks equity must do equity. We are of opinion that plaintiffs have failed to make out a cause of action.

It is, therefore, adjudged and decreed, that the judgment of the District Court be reversed, and judgment is hereby rendered for the heirs of defendant, with costs of both courts.