No. 118.—STEWART & JEWELL *v.* LEVI PRESLEY.

In interpreting a patent to lands, issued by the Government to an individual, all its clauses must be construed, the one by the other, giving to each the sense resulting from the whole instrument.  C. C. 1950.

In an action of rescission, the party seeking relief must first offer to restore his adversary to the situation he was in before the contract.  C. C. 1906; 3 An. 208; 14 An. 56, 474, 716; 21 An. 425.

APPEAL from the District Court, parish of Caddo.  *Levisee,* J. *Land & Taylor,* for plaintiffs and appellees.  *A. W. O. Hicks,* for defendant and appellant.

LUDELING, C. J.  The plaintiffs allege that, in March, 1865, they sold to Levi Presley two lots in the city of Shreveport for six thousand dollars, and bought from said Presley a certain tract of land situated in the State of Texas, for six thousand dollars.  That the two sales were, in fact, an exchange of the property mentioned.  They aver that the consideration of the transfer by them of the two lots in Shreveport was the tract of 640 acres of land in Texas, transferred to them by Presley, and they aver that the said consideration has totally failed; that, at the date of the said sales or exchange, the said Presley had no title to the lands translative of property in Texas, nor could he give possession, which he well knew at the time of the sale or exchange. They alleged that Presley is a non-resident, and pray for the sequestration of the two lots situated in Shreveport, and for damages caused

them by the fraudulent sale of Presley, and for a rescission of the sales or exchange above mentioned.

The defendant, who is a resident of Texas, appeared and excepted, that the petition alleged no cause of action against him. In case the exception be overruled, he answered that the consideration for the sales or exchange had not failed, and he expressly denied the allegations of the plaintiffs that he had no title to the Texas land at the time of the sale, and that he could not deliver possession thereof. He denied all fraud, and averred that the plaintiffs have never demanded of him the possession of the land, or informed him of any defect in his title, or notified him of any adverse claim of title or possession in any person, before the filing of this suit, etc.

He further alleged that the plaintiffs did not, before bringing suit, nor have they since, tendered a reconveyance to him of said lands sold or exchanged by him to them, and he prays that the plaintiffs' demands be rejected.

There was judgment in favor of the plaintiffs, and the defendant has appealed.

Many questions of law have been discussed in the briefs of the parties, which we deem it unnecessary to examine. We think we can dispose of this case without assuming the right to decide which of two titles to lands in Texas is good, or to settle questions of boundary between contiguous proprietors of lands in the State of Texas.

A careful examination of the patents in the record will show that litigation has grown out of a mistake in the call for the beginning corner of the Cheek grant, which embraces the land transferred by Presley to the plaintiffs. The *actual* beginning corner of the Cheek survey is the east corner of the Kleberg survey of 320 acres; but, by mistake, the northeast corner of F. Engelking's 114½ acre survey is named as the beginning point. This mistake is shown by the field notes, by the surrounding surveys, and by the natural objects called for in the surveys. The annexed map will enable us to detect more readily the error.

The true beginning place is established by several independent facts. The maps of contiguous surveys show that the Cheek land is bounded on the southeast and southwest by vacant prairie, on the northeast by Cumming's Mill tract, and on the northwest by the Kleberg and the Greenville tracts. The corners and the distances are such that the lines balance, and the survey closes at the east corner of Kleberg's survey, and includes the true complement of ground—640 acres.

The lines which terminate in the vacant prairie at *c* are each 2064 varas long; but the first line on Cumming's line is only 1584 varas. If it had commenced at Engelking's east corner, *g*, it must have run 2924 varas, or 1344 varas further, to reach the second corner, as mapped.

Again, the Cheek patent describes the location as being about eight

miles above San Felipe; the Kleberg patent reads ten miles above San Felipe.

The third line of the Cheek patent strikes the Greenville survey at *d*, then makes the fourth corner, and runs thence with Greenville's southeast line till it intersects the southwest line of Kleberg's, at *e*, (here again erroneously called Engelking's), and makes the fifth corner. Thence it returns with Kleberg's southwest line to his south corner of Cheek's sixth corner; thence with the southeast line to the east corner of Kleberg's (still called Engelking's), Cheek's true beginning.

If we begin at the point *d*, where Cheek's survey intersects Greenville's line, and reverse the courses, Cheek's third corner will be on Cumming's line 1580 varas from Kleberg's east corner, and Cheek's fourth corner will be at Kleberg's east corner, *a*, Cheek's true beginning.

Again, while the beginning corner of Cheek's survey is called Engelking's corner, it is clearly identified as Kleberg's; it is designated thus: "On the southern boundary of Cumming's Mill tract, *a blackjack on the bank of a spring branch*, bears south 75, west 125 varas." This is the exact description of Kleberg's east corner on Cumming's boundary. Kleberg's beginning also calls for Engelking's east corner, and it is there in truth, but it is described thus: "*A mulberry*, 7 *in. dia.*, *marked X*, on the southwest line of Cumming's Mill tract."

Kleberg's survey runs first with Engelking's southeast line to his south corner, *h*, near a pin oak. But when Cheek's survey purports to make the southeast corner of Engelking's no pin oak is mentioned, but the corner is blank, just as it is when it figures as Kleberg's third or south corner, *f*, with which it is really identical.

Engelking, speaking of the Cheek survey, testifies that "it commenced at the northeast corner of a tract of 329 acres, belonging to Louis Kleberg;" and he further states that the land is not improved, and nobody is living on it. Kleberg swears that "the land is not occupied, and never has been;" and he says: "The beginning corner is a blackjack on the bank of the spring branch, and not Engelking's east corner, as erroneously stated."

In interpreting the patent to Cheek, all its clauses must be construed, the one by the other, giving to each the sense resulting from the whole. Article 1950, C. C.; 9 R. 19; 6 Cerven, 281, Jackson *v.* Marsh. Pursuing this rule, we have arrived at the conclusion above stated. But it is well settled, not only by the textual provisions of the Code, but by the decisions of this court, that in actions of rescission, the party seeking relief must first offer to restore his adversary to the situation he was in before the contract. C. C. article 1906; 6 N. S. 229; 7 N. S. 95; 11 La. 102; 3 R. 400; 6 R. 472; 3 An. 208; 14 An. 56; 14 An. 474, 716; 21 An. 425.

This was not done, and the omission is fatal. The property of the defendant was improvidently sequestered and taken out of his possession by the plaintiffs. It is shown that ten dollars per month is a fair rental for the buildings on the lots sequestered, and that two hundred dollars would be a reasonable fee for defending this suit. We think the defendant entitled to these sums for damages done him by the wrongful acts of the plaintiffs. C. C. article 2294; 4 R. 196; 6 La.. 270; 11 La. 108.

It is therefore ordered and adjudged that the judgment of the district court be avoided and reversed; that the writ of sequestration be set aside, and that there be judgment rejecting the plaintiffs' demand,. with costs in both courts. It is further decreed that the defendant: have judgment against the plaintiffs for the sum of two hundred dollars, attorney's fees, and for rent, at the rate of ten dollars per month, from the thirty-first of December, 1865, until the property which was sequestered be delivered unto the defendant.