**SMITH ET AL. v. HEREFORD**

———

(February 25, 1929. Opinion and Decree.)
(March 18, 1929. Rehearing ·Refused.)

———

Leon Levitan, of New Orleans, attorney for plaintiffs, appellees.

W. J. Waguespack, of New Orleans, attorney for defendant, appellant.

WESTERFIELD, J. This is a suit on a promissory note in the principal sum of $500.00, dated December 9, 1922, and stipulating for interest at the rate of 7 per cent from date and 10 per cent attorney's fees. The note matured June 9, 1925, and this suit was filed July 11, 1925.

The defendant pleaded want of consideration and fraud, and, by way of reconventional demand, asked judgment for $4,553.01. There was judgment for plaintiff as prayed for and against defendant dismissing his reconventional demand. Defendant has appealed.

It appears that plaintiff and her husband, Herbert K. Smith, were engaged in the retail jewelry business at No. 611 Canal Street under the corporate name of "Herbert K. Smith, Inc.", the charter of the corporation having been executed in June, 1921. A public accountant by the name of G. R. Green, for whom the defendant, Hereford, worked, was employed as an auditor. Through his connection with Green, Hereford became acquainted with the affairs of the Smith corporation and with the Smiths. He concluded to interest himself in the business and acquired fifty-five shares of the capital stock, and was elected secretary of the company at a salary of $50.00 per week. As secretary, he was in complete charge of the company's finances, kept the books, paid the bills, made deposits and signed the checks. In December, 1922, Hereford bought the interest of the Smiths in the business, acquiring their stock on a basis of $100.00 per share, its par value. He paid $2,900.00 in cash and for the remainder of the purchase price executed seven notes, one of which matured every six months, the note sued on in this case being the fifth of the series. A condition of the sale of the stock required the Smiths to refrain from going into the jewelry business for a period of ten years. At the conclusion of the sale the Smiths left for California. Hereford, after his acquisition of the Smith stock, obtained additional capital, changed the name of the corporation to "Hereford, Inc." and proceeded to conduct the business. He was unsuccessful and on July 24, 1925, instituted proceedings in liquidation in the Civil District Court for the Parish of Orleans. The note of defendant having in the meantime become due, demand was made upon Hereford, without avail, and this suit followed.

It is alleged that the note is without consideration because given in payment of stock which, at the time of sale, was represented by the plaintiff and her husband to be worth par, or $100.00 per share, whereas, as a matter of fact, the book value of the stock at that time was only $27.73. The charge of fraud is based upon certain alleged false entries and other irregularities which are claimed to have resulted in a fictitious surplus, whereas, as a matter of fact, there was a deficit.

Assuming that the averments of fact in the answer have been proven, the most favorable aspect in which defendant's case may be considered, plaintiff is nevertheless entitled to recover. Hereford had exceptional opportunity for discovering the true condition of the affairs of the corporation. As previously stated, he was, as an employee of the accountant Green, its first bookkeeper; he thereafter became its secretary and, in that capacity, received and disbursed its income, kept its books and knew or should have known

every essential fact concerning its affairs. If Mr. or Mrs. Smith misrepresented anything, or practiced any deception, the least vigilance or industry would have revealed the fraud. Article 1847, Revised Civil Code, paragraph 5, reads as follows:

"A false assertion as to the value of that which is the object of the contract, is not such an artifice as will invalidate the agreement, provided the object is of such a nature and is in such a situation that he, who is induced to contract by means of the assertion, might with ordinary attention have detected the falsehood, he shall then be supposed to have been influenced by his own judgment than the assertion of the other."

"Mere commendations, or false representations as to value, where the buyer has an opportunity to ascertain its value by ordinary diligence and inquiry, does not constitute actionable fraud, even when made with intent to deceive."

German National Bank's Receiver vs. Nagel, 26 Ky. L. Rep. 748, 82 S. W. 433.

Federal-Farwell vs. Colonial Trust Co., (C. C. A.) 147 Fed. 480.

"To warrant a rescission or the recovery of damages, the representations must have been of such a character the complaining party had a right to rely upon them. Where the parties deal at arm's length and stand on the same plane, and the means of knowledge are at hand, a party to a contract for the sale of stock must use due diligence to ascertain the truth."

Fletcher on Corporations, Sec. 3876, Vol. 6, page 6543.

Judge Story, in his great work on Equity Jurisprudence, in Volume I, page 221, says:

"Equity is a practical system, although it will not aid immorality, does not affect to enforce mere moral duties; but its policy is to administer relief to the vigilant and put all parties upon the exercise of a searching diligence."

Moreover, whatever fraud was practiced, or whatever irregularity existed concerning the corporate affairs at the time that defendant bought the stock, was known to the defendant, Hereford, in January, 1923, about one month after his purchase of the Smith stock. From that time until the filing of his answer in this suit, July 22, 1925, no complaint and no offer of restitution was made to the Smiths. Defendant was, therefore, guilty of laches, and may not now be heard to complain.

"Parties to a contract discovering that they have been deceived or defrauded therein, must, in order to avail themselves of the fraud, so soon as the vice comes to their knowledge, repudiate the entire agreement.

"If instead of so doing, they advisedly continue to carry out the contract, objection is waived."

Marshal vs. Sims, 1 McGloin 223.

"In all actions of rescission, the party seeking relief must first offer to restore his adversary to the situation he was in before the contract. An offer of restitution must be alleged and proved by the plaintiff as an indispensable preliminary in an action to rescind a commutative contract."

Walden vs. City Bank of New Orleans, 2 Rob. 165, 166;

Heitt vs. Bridewell, 3 Rob. 279;
Tippett vs. Jett, 3 Rob. 313;
Jones vs. Sidle, 5 Rob. 65;
Sewell vs. Willcox, 5 Rob. 87;
Gorham vs. Hayden, 6 Rob. 450;
Merriman vs. Kemper, 9 Rob. 68;
Bonnafe vs. Lane, 5 La. Ann. 225, 229;
Jamison vs. Duncan, 12 La. Ann. 785;
Matta vs. Henderson, 14 La. Ann. 473;
Stewart vs. Presley, 22 La. Ann. 514.

"Before a party can annul his contract, he must restore what he has received under the contract, and place the other

parties in interest in the position they occupied previous to the contract."

Blake vs. Nelson, 29 La. Ann. 245.
Caddo Oil Co. vs. Producer's Oil Co., 134 La. 701, 64 So. 684.

"A person cannot rescind a contract for the purchase or sale of stock for fraud, either at law or in equity, if he has been guilty of laches or unreasonable delay either in discovering the fraud or in repudiating the contract after its discovery."

Fletcher on Corporations Sec. 3881, Vol. VI.

"A purchaser of stock who with knowledge of the fraud, elects to receive the benefits of the contract, or who uses the stock as his, or who by his acts, recognizes the contract as being in existence, thereby affirms the contract, and cannot subsequently rescind it."

Fletcher on Corporations, Sec. 3882, Vol. VI.

For the reasons assigned, the judgment appealed from is affirmed.