ELLIS,.Judge.
On January 15, 1958 the plaintiff purchased from the defendant, Moran Motor Company, Inc., a used 1957 DeSoto Sportsman Sedan, and as evidence of the transaction annexed to her petition “Car Invoice No. 3062” which shows:
“Price of car 3642.00
License and title 5.00
Total Cash Price 3647.00
Settlement:
Used Car 1955 Ply. Type Savoy 4 Dr. 625.00'
Bal Due Com Cr. 27 @ $157.27 3022.00"
Skip June, July, Aug 1958, 59, 60
Total 3647.00”
Also shown on this invoice to the left of the figures quoted is:
“Trade in 1200.00
ck to City Natl. Bk 575,00
625.00”
This $625.00 was the amount to be applied as a trade in and deducted from the total cash price of $3647.00.
Plaintiff joined as defendant Raymond T. Fuller, the salesman of Moran Motor Company, Inc., who made the sale to the plaintiff.
As a basis for the relief sought by plaintiff in her prayer she alleged that at the time she purchased the automobile, the defendant, Raymond T. Fuller, represented to her that the selling price was $3022.00, “and that she was only to pay said amount, notwithstanding the fact she was executing a contract for Three Thousand Six Hundred Forty-seven and no/100 ($3,647.00) Dollars ; that the said contract was merely an instrument for the purpose of bookkeeping, and that your petitioner would not be obliged or obligated to pay the amount in excess of Three Thousand Twenty-two and no/100 ($3,022.00) Dollars, which amounted to Six Hundred Twenty-five and no/100 ($625.00) Dollars, excessively.” She additionally set forth that she traded in a 1955 Plymouth Savoy 4-Door and was given credit in the amount of $1200.00 on said “trade in” less a credit of $575.00 paid by Moran Motor Company, Inc., on the pláin-tiff’s indebtedness at the City National Bank of Baton Rouge, which left a balance of $625.00 to be applied to the down payment to the defendants on the DeSoto automobile; that if the automobile had been sold at the price of $3,022.00, as represented by the defendant Fuller, less her trade in credit of $625.00, her unpaid balance on the automobile would have amounted to $2,397.00 and not $3,022.00 as shown by the invoice which she annexed to her petition; that Fuller as agent of the defendant, Moran Motor Company, Inc., falsely and fraudulently represented the selling price of the automobile; that she is aggrieved by the said false and fraudulent representation and desires that the contract of purchase be rescinded, revoked, annulled and declared to be of no legal effect. Wherefore she prayed that she have judgment annulling, revoking and declaring to be of no legal effect, the contract which she entered into on January 15th, 1958, “as represented by Car Invoice Number 3062 of the defendant, *409 Moran Motor Company, Inc., * * and that she have judgment against the defendants, individually and insólido, in the full and true sum of $3647.00 together with legal interest from date of judicial demand until paid and all costs of these proceedings.
The case was duly tried and judgment rendered dismissing plaintiff’s suit at her' costs from which she perfected an appeal to the Supreme Court which was transferred to this Court.
The contention of the plaintiff .in this case is that the salesman represented to her that the cash price of the automobile would be $3,022.00 and that she was overcharged $625.00. On the other hand, the defendants contend that the price of the automobile was $3,642.00 plus $5.00 license fee, less the $625.00 remaining on the trade in of $1200.00 after $575.00 had been deducted for an indebtedness the plaintiff owed to the bank, making a total of $3022.00. This is the figure which the plaintiff says that Fuller told her was the cash price of the car— that is if she brought him $3022.00 cash she could have the car, and therefore she contends that the $625.00 credit from the trade in should have been deducted from the $3022.00, while the defendants contend that they told her that she could get the car for $3022.00 cash including the trade in which would have included the $625.00.
It is strenuously contended that the testimony of Fuller, and particularly on cross-examination under the act, is conclusive proof that he told the plaintiff that $3022.00 was the cash price for the car; however, from a reading of his testimony and a consideration of the documents introduced in evidence, we believe that he intended the price to be exclusive of the trade in value of $625.00. There is no dispute that the trade in was to be for $1200.00 of which amount the Moran Motors was to pay the bank an indebtedness of the plaintiff of $575.00, but when plaintiff inquired of Fuller how much cash she would have to pay for the car he answered $3022.00, which was the truth. Plaintiff does not contend that Fuller or anybody connected with Moran Motor Company ever told her that the cash price of the car was $3022.00 less $625.00. The latter amount did not represent cash that the plaintiff had to pay as a part of the amount included in the note. At most it was a misunderstanding on plaintiff’s part of Fuller’s answer to her question of how much the cash price of the car would be, and a misunderstanding on Fuller’s part as to what plaintiff meant by the cash price of the car. We do not find from an examination of the record that there was any intent to commit a fraud or a material misrepresentation of any part of the transaction by Fuller to the plaintiff. The invoice, the buyer’s order and the note contains exactly what the defendants contend the contract always was supposed to be. In addition, the car invoice and the buyer’s order, which was signed by the plaintiff, was prepared by information furnished in the presence of the plaintiff as a result of a telephone conversation by Fuller to the Finance Company in order to find out the amount of each monthly payment, and in order to do this he gave them full information as to the figures to be used and the fact that it was to be a school teacher plan which relieved plaintiff of payment of any notes for the months of June, July, and August of 1958,-59,-60. In addition, the note was made up and the plaintiff herself wrote in the body of the note in ink the number of payments, 27, and the figures $157.27 and thereafter signed the note.
We are of the opinion that that portion of the District Judge’s written reasons which we shall hereinafter quote and adopt completely cover the facts and the law applicable to this case and we quote:
“This plaintiff contends that she bought on January 15, 1958, a 1957 DeSoto automobile from defendant Moran Motor Company, Inc., through a salesman for the price of $3,022.00. She traded in an automobile which she owned for $1,200.00 out of which the defendant would pay a debt of $575.00 which she owed leaving her a *410 net trade in equity of $675.00. The salesman had her sign several papers including the purchase order, note and chattel mortgage. The purchase order and chattel mortgage were signed in blank. At the time of the transaction the salesman called the Commercial Credit Company (who was to finance the transaction for Moran Motor Company) and after giving them the necessary information he ascertained that there would be twenty-seven (27) installments at $157.27 each. Upon giving these figures to the plaintiff and at the salesman’s request the plaintiff wrote these figures with her pen into the note in the appropriate spaces at the time she signed the note. She does not deny that. She did not take the trouble to multiply the amount of each installment by twenty-seven (27) to determine the amount of the note. She took possession and used the car and paid at different times four of the installments to the Commercial Credit Company. At the time of making her.first payment she received a passbook indicating the amount of the installments due and the maturity dates of the installments.
“In September she made some negotiations to sell the car and she says that for the first time she ascertained the full amount of the note and the unpaid balance. The plaintiff has brought this suit alleging that the salesman represented to her that the selling price was $3,022.00 and she was only to pay that amount, ‘not withstanding the fact that she was executing a contract for Three Thousand Six Hundred Forty Seven and no/100 ($3,647.00) Dollars; that the said contract was merely an instrument for the purpose of bookkeeping, and that your petitioner would not be obliged or obligated to pay the amount in excess of Three Thousand Twenty-two and no/100 ($3,022.00) Dollars,’ which she alleges was excessive by Six Hundred Twenty-five and no/100 ($625.00) Dollars. Plaintiff further alleges that the salesman ‘falsely and fraudulently represented the selling price’ and that she is ‘aggrieved by the said false and fraudulent representations.’ Plaintiff prays for judgment against Moran Motor Company, Incorporated and the salesman, in-sólido, for Three Thousand Six Hundred Forty Seven and no/100 ($3,647.00) Dollars, with interest and that the contract be annulled and revoked. Plaintiff does not tender the return of the car, which would be necessary, in order to recover the amount paid and to have the sale revoked.
“ * * * However that may be, relief to this plaintiff cannot be granted at this time. This plaintiff is not an ignorant, unlettered person who at the time of this sale had to depend entirely upon the representations of the salesman as to the credits and debits of this transaction. This lady is a mature person of experience, and she is exceptionally well-educated. Her appearance and demeanor on the witness stand in giving her testimony left no uncertainty about the fact that she is possessed of a high degree of intelligence and understanding. It does not seem reasonable or right to me that plaintiff can voluntarily make a deal, sign all the papers, the contents of which she is presumed to know, accept possession and use of the car from January to September, make four of the installment payments and then have the transaction set aside on the grounds set out in her petition and referred to above. It must also be noted that plaintiff was furnished the car invoice which she attached to her petition, but which was not offered in evidence. This invoice is practically the same as Defendant Exhibit — 1, the purchase order which she signed at the time of the purchase.
“ * * * I still think that, but from a study of the facts and the application of the law on the subject it leaves the Court helpless to grant such relief. The plaintiff was well aware of the situation. After she got home and examined the invoice she spoke to the salesman about it. It is impossible to believe that an intelligent, educated person could or did rely upon the representations of the salesman that ‘the contract was merely an instrument for the purpose of bookkeeping.’ That was the *411 time to act if she had been led into error, but she did not act. Instead, she continued to use the car and to make the payments called for. She was fully competent to deal at arms length with the salesman.
“The law applicable to this situation is Civil Code Article 1847. The opening statement and sub-paragraphs 1, 2, and 3 of that Article read as follows:
“ ‘Fraud, as applied to contracts, is the cause of an error bearing on a material part of the contract, created or continued by artifice, with design to obtain some unjust advantages to the one party, or to cause an inconvenience or loss to the other. From which definition are drawn the following rules.
“ T. Error is an essential part of the definition; an article (artifice) that cannot deceive can have no effect in influencing the consent, and can not injure the validity of the contract.
“ ‘2. The error must be on a material part of the contract, that is to say, such part as may reasonably be presumed to have influenced the party in making it; but it needs not be the principal cause of the contract, as it must J>e in the case of simple error without artifice.
“ ‘3. A false assertion, as to the value of that which is the object of the contract, is not such an artifice as will invalidate the agreement, provided the obj ect is of such a nature and is in such a situation that he, who is induced to contract by means of the assertion, might with ordinary attention have detected the falsehood; he shall then be supposed to have been influenced more by his own judgment than the assertion of the other.’
“In Smith v. Hereford, 10 La.App., 320, 120 So. 531, in a situation not wholly unlike the present case, the Court said:
“ ‘Mere commendations, or false representations as to value, where the buyer has an opportunity to ascertain its value by ordinary diligence and inquiry, does not constitute actionable fraud, even when made with intent to deceive. German National Bank’s Receiver v. Nagel, 26 Ky.Law Rep. 748, 82 S.W. 433; Farwell v. Colonial Trust Co. (C.C.A. 8) 147 F. 480.’
“To warrant rescission or the recovery of damages, the representations must have been of such a character the complaining parties had a right to rely on them. Where the parties deal at arm’s length and stand on the same plane, and the means of knowledge are at hand, a party to a contract for the sale of stock must use due diligence to ascertain the truth. 6 Fletcher on Corporations, sec. 3876, p. 6543.
“Judge Story, in his great work on Equity Jurisprudence, in Volume 1, p. 221, says:
“ ‘Equity is a practical system, although it will not aid. immorality, does not affect to enforce mere moral duties; but its policy is to administer relief to the vigilant and put all parties upon the exercise of a searching diligence.’ ”
“It will be noted that error is an essential part of the definition of fraud.. Artifice that could deceive can have no- effect on the validity of the contract unless it is shown that the person was actually deceived and that such artifice and deception led the person into error. The person upon whom the artifice is practiced cannot walk blindly into the error and then plead ignorance unless that person is actually ignorant and mentally incapable of understanding. If this plaintiff had exercised the least care and attention to what she was doing her complaints could have been voiced at the time. She was fully capable mentally to exercise that care necessary to her for her own protection and understanding. If she were of such a low mentality and intelligence as to be incapable of understanding or calculating the amounts we would have a different situation in this case. She was *412 not that type. • I think she possessed a far more alert mind and a higher degree of mental capacity than the salesman with whom she was dealing if she had only employed such alertness and capacity.
“An error of fact is defined in Article 1821 of our Civil Code as follows :
“ ‘That is called error of fact, which proceeds eithér from ignorance of that which really exists, or from a mistaken belief in the existence of that which has none.’
“The authorities are clear that negligence in failing to read a document or signing it in blank does not invalidate the document. It was plaintiff’s own negligence and inattention if she at that time did not know the contents or import of the documents she signed. At'this late date she cannot be relieved of the obligation.
“For these reasons there will be judgment in favor of the defendants and against the plaintiff, dismissing plaintiff’s suit at plaintiff’s costs, and judgment will be signed accordingly.”
We have purposely deleted those portions of the lower court’s opinion with which we do not agree. We do not find anything in this record indicative of the fact that something was vitally wrong in connection with this sale in the manner in which the amount of note was arrived at. We are of the opinion that the $625.00 was never intended to be deducted from the $3022.00 but that the cash price was to include this amount plus the $5.00 for license and title or a total of $3647.00. We can understand that the plaintiff might have misunderstood and thought that the $625.00 was to be deducted from the $3022.00, however, she had heard a conversation on the phone between Fuller and the finance company in which the whole deal was discussed in order that they could figure out the amount of the monthly payments, and in addition had put the number of monthly payments as well as the amount in her own handwriting in the note before signing it. She had all the information, prior to the consummation of the deal to give her the true answer as to the actual price she was paying for the car, which would include the $625.00. The actual cash price, that is, the cash she would have to put out would be the $3022.00 plus the finance, interest and insurance charges, all of which is shown on the various documents offered in evidence.
For the above and foregoing reasons the judgment of the District Court is affirmed.
Affirmed.