### DEALERS FINANCE CO., Inc., v. WOODARD.

#### No. 4402.

Court of Appeal of Louisiana. Second Circuit.

April 28, 1933.

J. Rush Wimberly, of Arcadia, for appellant.

Stewart & Stewart, of Minden, for appellee.

DREW, Judge.

Plaintiff instituted this suit on a promissory note for $1,250, with 8 per cent. per annum interest from November 19, 1925, maturity date, until paid, less certain credits.

Defendant filed an exception of no cause of action, which was overruled, then an-

swered, denying the indebtedness. The defense set up can best be stated by quoting from defendant's answer:

"Now further answering defendant shown that under representations made by the said Dealers Finance Company, Inc., through its duly authorized officers, agents and representatives, and which officers, agents and representatives of said Dealers Finance Company, Inc., which corporation your defendant is informed, and therefore alleges, was organized for the purpose of financing paper on automobiles, and which corporation was desirous of obtaining the business of the Arcadia Motor Company which your defendant was the president of and a stockholder and a director; and which corporation, the Arcadia Motor Company, Inc., was dealer handling Ford automobiles, trucks, etc., and in the sale of such automobiles and trucks they were taking notes for the unpaid purchase price of such automobiles; and, the said Dealers Finance Company, Inc., being desirous of handling said notes, induced, persuaded and prevailed upon your defendant upon the following representations to sign the note sued on, which note was given for stock issued or supposed to be issued to your defendant in the Dealers Finance Company, Inc., the representations being that if your defendant representing the Arcadia Motor Company, Inc., would take the stock in the said Dealers Finance Company, Inc., and give his note, and would allow the said Dealers Finance Company, Inc., to handle the paper given by customers of the Arcadia Motor Company, Inc., that your defendant would never be called upon to pay the note, but that the note would be paid and cancelled by the dividends of the Dealers Finance Company, Inc., made out of the business of handling automobile notes and financing automobile sales.

"IV. That your defendant, acting under said representations in good faith, acted upon said representations and signed the note with the distinct understanding that he would not be called upon to pay any part of same, but that said note would be liquidated with dividends of the said Dealers Finance Company, Inc.

"V. Defendant further avers and alleges that he was never called on for the payment of said note until after the Dealers Finance Company, Inc., went into liquidation, and that the credits allowed or shown in the petition of the plaintiff were all brought about by the purported dividends in the Dealers Finance Company, Inc. That in carrying out the agreement of the officers and agents and persons for whom the Dealers Finance Company, Inc., are bound, all the purported dividends, or dividends declared by said corporation, were applied on said note by the officers and agents of the said Dealers Finance Company, Inc.

"VI. Your defendant further shows that in pursuance of said agreement and understanding and contract your defendant herewith tenders back to said corporation the stock issued in accordance with the above facts and circumstances.

"VII. Defendant further shows that the handling of the Arcadia Motor Company, Inc., business, that is, the notes of its customers, was valuable business and that your defendant and his corporation would never have allowed the said Dealers Finance Company, Inc., to have handled the said notes of the customers of the Arcadia Motor Company, Inc., but for the above stated facts and agreement. That they had satisfactory arrangements for handling of their paper, and as an inducement to defendant and the said corporation to allow the plaintiff, Dealers Finance Company, Inc., to handle said paper that they issued stock of the said corporation in the amount of One Thousand ($1,000.00) Dollars, later reducing said stock to Nine Hundred Fifty ($950.00) Dollars, or nine and one-half (9½) shares, which stock certificate is numbered one hundred and fourteen (114), and as heretofore alleged is attached hereto for the purposes hereinabove alleged.

"VIII. Defendant further avers and alleges that under said agreement as heretofore alleged the said plaintiff corporation, or its representative, is holding all, and has held all, the dividends since the issuance of the original stock, and that the said W. R. Fogle, Jr., Receiver, is now and has been since he was appointed Receiver or Liquidator retaining said dividends that are supposed to be declared on the stock in the said corporation.

"IX. Defendant further answering specially denies the right or the authority of anyone to credit any sums whatsoever on interest on said note.

"X. Defendant further shows that there was supposed to be One Thousand ($1,000.00) Dollars worth of stock, or ten (10) shares, issued in the corporation and that when they reduced the capital stock of the said corporation, the note should have been reduced to the corresponding amount, or Sixty-two and 50/100 ($62.50) Dollars."

After trial was had, the lower court rendered judgment for plaintiff for the amount of the note, less money credits developed on the trial to be due defendant. From this judgment, defendant has prosecuted this appeal.

The exception of no cause of action is not urged in this court and has, therefore, been abandoned.

The Dealers Finance Company, Inc., was a corporation engaged in handling notes given for the purchase price of automobiles. When a dealer would sell a car and take notes in payment, the plaintiff corporation would buy or handle the notes and make the interest.

In order to make a success of the business, it was necessary that it have a great volume of business.

Defendant was a dealer in Ford automobiles at Arcadia, La., and up until the time of the transaction sued on here, he was financing his notes elsewhere. The plaintiff corporation was desirous of his business and, through its proper representatives, approached him in regard to getting his business and selling him stock in the corporation. If it could interest defendant in the corporation, it knew it could secure his business and would handle all of his notes. Mr. W. R. Fogle, secretary-treasurer of the plaintiff corporation, and the majority stockholder therein, together with Mr. C. O. Holland, his assistant, with this purpose in mind approached the defendant on the subject. The principal purpose of the visit was to get the business of the defendant. The sale of the stock in the corporation was only a means of getting his business. It was secondary to the main purpose.

When they offered defendant some of the stock, he informed them he had no money to put into a finance company, at which time they offered to sell him ten shares of the stock for the price of $1,250, and to take his note and let the note be liquidated by the dividends declared by the corporation. With this understanding, defendant gave his note for $1,250, payable one year after date, with interest from maturity. The note was dated November 17, 1924, and made payable to "Dealers Finance Company, Inc." Dividends were declared on January 25, 1925, January 4, 1926, December 29, 1926, and December 31, 1928, all of which dividends were credited on defendant's note, except $70 of the dividend declared December 29, 1926, which is unaccounted for. The check for the dividend of that date was for $187.50 and was indorsed by defendant and returned to plaintiff corporation to be applied on his note, only $117.50 of that dividend being credited on his note for reasons unexplained by plaintiff, although questioned about it.

Whether any dividends were declared between the dates of December 29, 1928, and January 20, 1931, is not shown. If any were declared, defendant did not receive them nor was he given credit on his note.

On January 20, 1931, the stockholders of the corporation met, defendant not being present, and by formal resolution, dissolved the corporation setting forth that all debts of the corporation had been settled and appointed W. R. Fogle, Jr., liquidator, to wind up the affairs and distribute to the stockholders the funds derived from the liquidation. From this time until the date of the trial of this suit below, on November 30, 1931, the liquidator had collected and distributed to the stockholders considerable sums of money.

However, he did not send defendant any amount whatever nor did he credit his note with any amount, and on the trial of this case, did not know what amount, if any, was due to defendant to be applied on his note. Another witness who had the same amount of stock as defendant, swore that he had received from the liquidator, since the dissolution of the corporation, sums amounting to $501.

It is to be noted that defendant's note on its face was due November 17, 1925, and there had never been a demand on defendant to pay the note nor to renew it, until just a few days prior to the filing of this suit, when he was requested to give a new note, which he refused to do.

Apparently all technical pleas and counterclaims have been waived by both plaintiff and defendant in the trial of this case. There was no objection to parol testimony and no claim that the representative of the plaintiff corporation was without authority to bind the corporation. The minutes of the meeting of the stockholders at the time the corporation was dissolved show there are no creditors involved in the outcome of this suit. It is purely a matter in which the corporation and defendant are concerned alone.

The case was tried below and in this court solely on the question of what was the agreement at the time the note was given as to how it should be paid. At the time Mr. Fogle and Mr. Holland took the note for the corporation, the business of the corporation was flourishing. In a period of about one year's time prior thereto, the book value of the stock had increased 25 per cent., and they believed, and had a just right to believe, that the business would continue and that the dividends on the stock would more than pay the amount of the purchase price of the stock. With this idea strongly imbedded in their minds, they felt safe in telling defendant that his dividends would liquidate his note given for the purchase price of the stock, and they so told him. He would not have bought the stock otherwise, as he positively swore. They did not care about defendant buying the stock other than to get his business, which they did get from that time on. They did not need his capital in business. If they had, they would not have taken his note. What they wanted was his business, and they got it by persuading him to buy the stock on the representation that his dividends would liquidate the note he gave in payment of the stock. It is true they did not tell defendant in so many words that he would not have to pay for the stock if the dividends were not sufficient. Neither did they tell him in so many words that he would have to pay for the stock if the dividends were not sufficient. They told him the dividends would liquidate the note and led him to believe that he would never be called upon to pay the note.

It is clear from the evidence that if defendant had known he was obligated on the note, other than for his dividends, he would not have signed the note, or purchased the stock or given to plaintiff his business.

We think a fair deduction from all the testimony is that when defendant signed the note, it was the understanding and intention of both the representatives of plaintiff and defendant that he would never be called upon to pay the note, other than by the dividends on his stock. We think a corroboration of this is the fact that defendant was never called upon to pay the note nor to renew it, until a few days prior to the filing of this suit and after the dissolution of the corporation by mutual consent of the stockholders.

It is fortunate for plaintiff that the dividends declared up to the time of trial of this case were nearly sufficient to discharge the note, and it was shown on the trial that there were some moneys yet to be collected which, when properly distributed amongst the stockholders, will no doubt liquidate the note of defendant and in that manner bear out the judgment of Messrs. Fogle and Holland at the time they traded with defendant.

The judgment of the lower court is incorrect and is reversed; and there is now judgment for defendant, rejecting the demands of plaintiff, at its cost.