(117 So. 137)

No. 27704.

**FARMERS' LOAN & MORTGAGE CO., Inc.,
v. LANGLEY.**

March 1, 1928.   On the Merits April 9, 1928.

Rehearing Denied May 7, 1928.

Thomas Arthur Edwards, of Lake Charles, for appellant.

Cline & Plauche, of Lake Charles, and Clinton S. Girod, Jr., of Baton Rouge, for appellee.

On Motion to Dismiss.

THOMPSON, J. The appellee contends that this appeal should be dismissed because no appeal bond has been filed as required by law and the order granting the appeal, and, in the alternative, should it be held that an appeal bond was filed, then such filing was too late to operate as a suspensive appeal bond.

It appears that judgment was rendered in the court below on December 9, 1925, and a motion for a new trial was filed and overruled on the 10th. On the 14th an order for a suspensive and devolutive appeal was granted defendant.

On December 21st the appellant presented to the clerk of court an appeal bond in the amount required for a suspensive appeal.

The delay expired on December 20th, but, as that day was Sunday, the appellant had all of the following day in which to file his bond. So the presentation of the bond was in ample time.

We do not understand that this is disputed.

The bond was informal when presented to the clerk of court; the informality consisting in the failure of the sureties to make the affidavit required by law.

The affidavits, however, were made and subscribed on the day following the filing of the bond with the clerk.

In this connection it may be stated that the clerk did not actually mark the appeal bond "Filed," but on the 23d of December made and signed a certificate in which it is stated that the bond was presented to him on the 21st with the affidavits in blank, that on the 22d he returned the bond to defendant's attorney with the request that he have the affidavits executed, and that said bond was returned to him (the clerk) on the 23d when he indorsed on the said bond "Presented 12/21/25," and affixed his signature thereto.

The counsel for appellee made no objection to the bond in the court below, and has not urged here the lack of timely affidavits to the bond. The sole and primary complaint is

that the bond was not actually filed by the clerk.

Our opinion is that the bond should be held as having been filed on the day it was delivered to the clerk.

It is true section 4 of Act 112 of 1916 provides that no officer shall accept any bond unless each surety thereon shall have made oath that he is worth over and above all his debts, the amount for which said surety has bound himself, but this provision of the law is in favor of the appellee, and the nonobservance of the formality does not strike the bond with absolute nullity.

Under the provisions of Act 112 of 1916, any error or omission in a judicial bond, or deficiency in form or substance, or in the amount thereof, or the solvency of the surety thereon, may be corrected within two days after notice given to the party furnishing such bond; and this is broad enough to allow a correction in any one case where there has been a bona fide attempt to furnish a bond and surety according to law. The above statement is taken from Onorato v. Sanchez, 14 Orleans App. 319.

If the clerk had filed the bond on the day it was presented to him, the bond would have become a legal bond without the required affidavits, since the appellee made no complaint in the lower court, and for that reason would have been precluded from arguing the same for the first time in this court as a cause for dismissal of the appeal.

■ It was the duty of the clerk to have either filed the bond or returned it to the appellant for correction on the day it was presented to be filed. The clerk could not delay such action to the following or any other day and thus defeat the right of the appellant to a suspensive appeal.

■ Nor can the right of the appellant be prejudiced by the failure of the clerk to actually file the bond when presented to him.

It was not in the power of the appellant to force the clerk to indorse the bond filed.

■ If the appellee had pursued in the court below the course pointed out in the statute, and had urged the objections to the bond, the appellant would have had the right within the delay named in the statute to have supplied the affidavits to the bond or to have given a new and supplemental bond, and this corrected, new, or supplemental bond would have had the effect of maintaining the original order of appeal in full force and effect as of date that the original bond was furnished, and with all the rights and privileges resulting from such original order or process, and with all liabilities and obligations arising from such original bond. Section 6, Act 112 of 1916.

What appellee could have forced the appellant to do by rule, the appellant has done voluntarily, and thereby we think has preserved his suspensive appeal in full force and effect.

The motion to dismiss is therefore overruled.

### On the Merits.

O'NIELL, C. J. This is a suit for a balance due on a subscription for stock in the Farmers' Loan & Mortgage Company, Inc., and for the attorney's fee allowed by section 9 of Act 267 of 1914, p. 526. The application, dated December 27, 1919, and signed by the defendant, contained his unconditional obligation to pay $1,000 on January 27, 1920, and $2,000 on December 27, 1920, with interest at 8 per cent. per annum from the date of the application. He paid the $1,000 due on January 27, 1920, but failed to pay the $2,000 due on December 27, 1920. His pleas in defense of the suit are, first, that the action is barred by prescription; second, that the stock subscription was canceled by a letter from the president of the corporation dated December 27, 1922; and, third, that the subscription was obtained by fraud and misrepresentation on the part of an agent of the corporation. After hearing the evidence, the court gave judgment in favor of the plain-

tiff for the $2,000, with interest as prayed for, and for 10 per cent. attorneys' fee. The defendant has appealed from the decision.

■■ There is no merit in the plea of prescription, for the suit was filed within five years after the date on which the $2,000 was due. Besides, the stock certificate was issued and attached to the instrument evidencing the obligation to pay the $2,000, as collateral security for its payment; and it was so stated in the instrument representing the obligation. The pledge of the stock as collateral security for the debt was, in effect, a continuous acknowledgment of the debt, and prevented prescription. Mongomery v. Levistones, 8 Rob. 145; Police Jury v. Duralde, 22 La. Ann. 107; Citizens' Bank v. St. Amans, 23 La. Ann. 293; Citizens' Bank v. De St. Romes, 28 La. Ann. 125; Conger v. City of New Orleans, 32 La. Ann. 1250; Latiolais v. Citizens' Bank, 33 La. Ann. 1444; Forstall v. Consolidated Association of Planters, 34 La. Ann. 770; Citizens' Bank v. Hyams, 42 La. Ann. 729, 7 So. 700; Begue v. St. Marc, 47 La. Ann. 1163, 17 So. 700; Villere v. Shaw, 108 La. 74, 32 So. 196; First National Bank v. Bell, 141 La. 53, 74 So. 628; Bank of Slidell v. Gause, 157 La. 128, 102 So. 93.

■ The letter which the defendant refers to as a cancellation of the stock subscription was written by the president of the corporation, as follows:

"December 27, 1922.

"Mr. T. S. Langley, Welsh, Louisiana—Dear Sir: We have your note for $2,000.00 dated December 27th, 1919, due December 27th, 1920.

"We find that no payments either of interest or principal have been made on this note up to the present time, and as the company has decided before closing their books for the year 1922 that all stock certificates which remain unpaid at that time will be canceled, unless some arrangements have been made to take care of the unpaid balance.

"Kindly advise by return mail your wishes in the matter.

"Yours very truly,

"Farmers' Loan & Mortgage Co.,

"W. J. Duig, Pres."

The evidence shows that the president of the corporation had no authority whatever, either from the board of directors or otherwise, to cancel a stock subscription. It shows also that no such action was ever taken by the board of directors, or by any other authority, with regard to the defendant's stock subscription. The president's threat to cancel the stock was made, manifestly, for the purpose of inducing the defendant to pay the balance due on his subscription. All that could be said of the president's language, in favor of the defendant, is that it gave him the right to say, in response to the letter, whether he desired to have his subscription canceled. The letter did not say merely that the company had decided that all stock certificates remaining unpaid at the time of the closing of the company's books would be canceled. The statement was: "And as the company has decided * * * that all stock certificates which remain unpaid at that time will be canceled. * * * Kindly advise by return mail your wishes in the matter." The defendant did not answer the letter. He made no claim or pretense that his stock subscription was canceled, until April 21, 1925, when the company's attorneys threatened to sue for the $2,000. We agree with the district judge that the stock subscription was not canceled.

■ The charges of fraud and misrepresentation are, specifically, that the company's agent, named Colbert, who obtained the defendant's stock subscription, represented to the defendant that the company had a capital of $1,000,000 and would pay 15 per cent. per annum in dividends.

As to the $1,000,000 capital, the defendant testified that Colbert told him, as an inducement for him to subscribe for the stock, that the company had an *authorized* capital of $1,000,000; and the truth is that the company had then an *authorized* capital of $1,000,000. The defendant may have understood that an *authorized* capital meant *paid-*

*in* capital; but there was no willful misrepresentation on the part of Colbert, in that respect.

As to the dividends, it does not appear that Colbert said that the company *was paying* or *had paid* dividends amounting to 15 per cent. per annum. What he is supposed to have said was that the company *would pay* 15 per cent. per annum in dividends, which was merely an expression of opinion, or of confidence, on Colbert's part.

"Ordinarily, an intending subscriber or purchaser [of capital stock in a corporation] has no right to rely upon a statement which, by reason either of its form or subject-matter, amounts merely to an expression of opinion or belief, and such a statement does not amount to such a representation of fact as will be ground either for an action for damages or for rescission." 14 C. J. 607, § 878.

The agent, Colbert, who obtained the defendant's subscription, was dead when this suit was tried. The only evidence of what he said in inducing the defendant to subscribe for the stock is the testimony of the defendant himself. With due regard for his veracity, which is not impeached, we must apply the universal rule of evidence, that verbal statements attributed to a person who has since died—when such testimony, as in this case, is not amenable to the rule excluding hearsay or self-serving declaration—are the weakest kind of evidence.

"Extrajudicial admissions of a dead man are the weakest of all evidence, since they cannot be contradicted, and no fear of detection in false swearing impends over the witness." Bodenheimer v. Executors, 35 La. Ann. 1005; Wood v. Egan, 39 La. Ann. 684, 2 So. 191; Succession of Townsend, 40 La. Ann. 66, 3 So. 488; Foote v. Godwin, 42 La. Ann. 521, 7 So. 844.

■ Another reason why the charge of fraud and misrepresentation cannot avail the defendant in this case is that he did not make the complaint within a reasonable time after he was thoroughly informed of the financial condition of the corporation. On the contrary, he received and cashed a dividend check for 6 per cent. on his stock on January 8, 1920, and another on July 8, 1920, knowing thereby that the company was paying not 15 but 12 per cent. per annum in dividends.

"Like all other contracts, subscriptions to corporate stock, induced by fraud or misrepresentation, while they may be valid in form, may be set aside as invalid, at least in a suit between the subscriber and the corporation itself, provided rights of third parties have not accrued. * * * But the subscriber must, upon discovery of the fraud, repudiate the purchase promptly. He has no right to hold onto the stock, in the hope or expectation of realizing a profit therefrom, and, failing in this, to disaffirm the contract. Hence, if, after discovering the fraud, he demands or receives a dividend, or continues to act as stockholder, or does any act inconsistent with an intention to disaffirm the contract, he will be held to have waived the fraud." 7 R. C. L. § 211, pp. 238, 239.

"A subscriber must act promptly to entitle him to relief from a subscription to stock procured by fraudulent statements or prospectuses. An unreasonable delay tending to show acquiescence on his part is fatal." 7 R. C. L. § 213, p. 240.

"Since a subscription for or purchase of stock induced by fraud is not void, but merely voidable at the option of the subscriber or purchaser, it may be ratified or affirmed expressly or impliedly by him on discovery of the fraud, in which case he loses his right to rescind. And there is such a ratification or affirmance, so far as to bar a rescission, if, with full knowledge of the fraud or of facts from which such knowledge must be implied, but not otherwise, the subscriber or purchaser either expressly treats the contract as binding upon him notwithstanding the fraud, or acts as an incorporator, stockholder, or officer of the corporation, pays assessments, receives dividends, transfers his stock, or does any other act which is clearly inconsistent with a rescission." 14 C. J. § 867, p. 594.

Our conclusion is that the judgment appealed from is correct.

The judgment is affirmed.