**DEALERS' FINANCE CO., Inc., v. WOODARD.**

No. 4402.

Court of Appeal of Louisiana. Second Circuit.

Dec. 1, 1933.

For former opinion, see 147 So. 556.

J. Rush Wimberly, of Arcadia, for appellant.

Stewart & Stewart, of Minden, for appellee.

TALIAFERRO, Judge.

The facts of this case and the pleadings are discussed in detail in our original opinion, 147 So. 556. We shall not herein reiterate same beyond what may be necessary to this opinion.

The plaintiff corporation had been organized for about one year before defendant was approached by W. R. Fogle, Jr., and C. O. Holland, secretary-treasurer and manager, respectively, thereof, and induced to purchase ten shares of its capital stock for $1,250. During this brief period of operation the company's business bespoke for it a most prosperous future, yielding to its stockholders handsome returns on their investments. These facts were imparted to defendant in the urge to interest him in the company to the extent of subscribing for the stock. Plaintiff's representatives were impelled by the desire to secure for it the business which defendant had theretofore given to other finance corporations. No facts were misrepresented; there is no suggestion of fraud or error in connection with the sale of the stock. All parties agree that it was thought that the dividends earned by the stock would continue to be large, and that the note defendant gave for the stock would eventually be retired therefrom. Had not the depression, that still grips the country, come on, there is little doubt that these hopes and expectations would have come true. But no one, not even defendant, says that it was agreed that, should these hoped-for dividends not be sufficient to extinguish the note in its entirety, there would be no personal liability of defendant for the unpaid balance on the price. The note was delivered to the company and carried by it as an asset. The stock was issued and delivered to defendant, and was thereafter a liability of the company, offsetting the note in its financial set-up.

Defendant served as a member of the board of directors of the company. He ceased to be a director only when it was determined to go into liquidation. He frankly says that he was induced to buy the stock and shift his business of handling mortgage paper against automobiles to the company, because "It looked like a chance to make some money out of it as they put it up to me."

He further says that they (referring to Fogle and Holland) did not misrepresent anything to him "until they called on me for this note here," and, when asked this question: "Q. But was there any agreement that that was all you would ever owe, what these dividends amounted to?" he answered: "A. Well, nothing was mentioned about that. It was understood that the dividends were to be ample to pay for it."

There is no doubt that defendant's purchase of the stock was influenced by the belief and opinion, arising from a knowledge of the company's condition and its past successful business, that its earnings, applicable to his stock, would be sufficient to finally pay off the note. He was guaranteed by no one that this would happen. He took the chance all investors in like ventures take. If the business is uniformly successful, all is well; if conditions, even those beyond the control of man, prevent success, the investors stand to lose. The fact that as a concomitant of the venture defendant gave to the company of which he became a stockholder and director a line of business that had proven profitable to him in the past does not materially affect the situation. There is no complaint on his part that his own company (plaintiff) did not carry out its duty in this respect.

Defendant's note was dated November, 1924. Plaintiff's affairs were placed in liquidation in January, 1931. To this date defendant had received dividends of over $600 which were credited on the note. This case was tried in November of that year. To the date of trial, since liquidation began, the dividends or cash distributions applicable to defendant's stock amounted to $501.13. Credit for this amount was given him by the lower court. It does not appear definitely what other cash distributions stockholders may expect, but it is certain there will be some. We see no legal or equitable reason why defendant should not share the same treatment, receiving the same benefits and accepting the same responsibilities, in proportion to his stock ownership in, and his liability to, the company, as other stockholders and debtors to it will receive and have to accept.

One who subscribes a promissory note, an unconditional promise to pay, and receives and accepts for it a thing then considered to be of equal value with the amount of the note, and who for several years applies, or authorized the applying of, the dividends from the stock on the note as credits, should not be allowed, in the absence of any fraud, error, or misrepresentations, to escape the responsibility which the tenor of the note implies, and which, ordinarily, his signature thereon superinduces.

Signatures on promissory notes are not mere ornaments. They mean something and import some legal liability, or else they would not be required.

"And parties who sign negotiable instruments, or other solemn obligations, must expect to be held liable according to the tenor thereof." Thompson & Co. v. Sporl, 160 La. 359, 107 So. 135, 138.

The case of Farmers' Loan & Mortgage Co. v. Langley, 166 La. 251, 117 So. 137, 140, we think is on all fours with, and decisive of, the present case. Langley was sued for a balance due by him on subscription to plaintiff's capital stock. He pledged the stock certificate to the company as collateral security for payment of the balance due by him to it. His defenses to the suit were: (1) That his subscription had been canceled; and (2) that the subscription was obtained by fraud and misrepresentation on the part of an agent of the corporation. The charges of fraud and misrepresentation were, specifically, that the company's agent, who obtained the subscription of defendant to the stock, represented to him that the company had a capital of $1,000,000 and would pay 15 per cent. per annum dividends. Disposing of the question of the representations about dividends, the court said: "As to the dividends, it does not appear that Colbert said that the company was paying or had paid dividends amounting to 15 per cent. per annum. What he is supposed to have said was that the company would pay 15 per cent. per annum in dividends, which was merely an expression of opinion, or of confidence, on Colbert's part."

In this case it was shown that Langley received and cashed one annual dividend check for 6 per cent. on his stock, and another for 12 per cent. thereon, bringing knowledge to him that the company was not paying the 15 per cent. annual return on the stock as, he says, had been represented to him. He held on to the stock all the while, as was done by Woodard in the present case, and accepted the dividends. The syllabus germane to the point discussed reads: "In a suit against a subscriber for the amount due on a stock subscription, where the subscriber set up fraud of the corporation's agent in representing that the company had authorized certain capital and would pay certain dividend, held that such statements did not amount to such a representation of fact as would be ground for rescission, since they were merely statements of opinion or belief."

Pertinent to the questions presented in the present case, we quote from 14 Corpus Juris, 607, par. 878, the following: "Ordinarily an intending subscriber or purchaser has no right to rely upon a statement which by reason either of its form or subject matter amounts merely to an expression of opinion or belief, and such a statement does not amount to such a representation of fact as will be ground either for an action for damages or for rescission. But, if expressions of opinion are coupled with a representation of fact, or if a representation known to be false,

and not equally within the means of knowledge of the other party, relates to a matter which is susceptible of exact knowledge, and is made with intent that it shall be acted upon, and it is in fact relied upon as intended, and deceives, it is to be regarded as a representation of fact, even though it may be made in the form of an opinion. And the expression of an opinion may be fraud and ground for rescission if falsely made, with intent to deceive, and if it does in fact deceive, if there is a known relation of trust and confidence or the parties are not on equal terms, although not where the opinion relates to a matter equally open to both parties."

And 7 Ruling Case Law, 238, par. 211, has this to say:

"Like all other contracts, subscriptions to corporate stock, induced by fraud or misrepresentation, while they may be valid in form, may be set aside as invalid, at least in a suit between the subscriber and the corporation itself, provided rights of third parties have not accrued."

"But the subscriber must, upon discovery of the fraud, repudiate the purchase promptly. He has no right to hold on to the stock, in the hope or expectation of realizing a profit therefrom, and failing in this, to disaffirm the contract. Hence, if after discovering the fraud, he demands or receives a dividend, or continues to act as a stockholder, or does any act consistent with an intention to disaffirm the contract, he will be held to have waived the fraud."

And again, from 14 Corpus Juris, 594, par. 867, touching the question of ratification of a subscription to stock, where there has been fraud or misrepresentation: "And there is such a ratification or affirmance, so as to bar a rescission, if, with full knowledge of the fraud or of facts from which such knowledge must be implied, but not otherwise, the subscriber or purchaser either expressly treats the contract as binding upon him notwithstanding the fraud, or acts as an incorporator, stockholder, or officer of the corporation, pays assessments, receives dividends, transfers his stock, or does any other act which is clearly inconsistent with a rescission."

We have, after a studious restudy of this case, arrived at the conclusion that our former judgment herein is erroneous, and that the judgment appealed from is correct; and, for the reasons herein assigned, the lower court's judgment is affirmed.

DREW, J., dissents and adheres to the former decree of this court.