256 So.2d 766 (1971)
Irvin F. POLMER
v.
Philip P. SPENCER et al.
Mervin Joseph POLMER
v.
DUCROS PLANTATION, INC., et al.
Nos. 8648, 8649.
Court of Appeal of Louisiana, First Circuit.
December 20, 1971.
Rehearing Denied January 31, 1972.
Writ Refused March 8, 1972.
*767 Solomon S. Goldman, New Orleans, for defendants-appellants Philip P. Spencer and Ducros Plantation, Inc., and others.
Philip J. McMahon, of Borowski, Lofaso, McMahon & McCollam, Houma, for plaintiffs-appellees Irvin F. and Mervin J. Polmer.
Before LANDRY, BLANCHE and TUCKER, JJ.
BLANCHE, Judge.
Defendants, Philip P. Spencer and Ducros Plantation, Inc., perfected suspensive appeals from judgments rendered in two suits which were consolidated for trial. Both suits arise out of the same essential factual situation. This opinion will deal with all issues presented in both suits on appeal, although separate decrees in each appeal will be rendered. For convenience, the suit entitled "Irvin F. Polmer v. Philip P. Spencer et al.," Appeal No. 8648, will *768 hereinafter be referred to as "Irvin F. Polmer Suit," whereas the suit entitled "Mervin Joseph Polmer v. Ducros Plantation, Inc., et al.," Appeal No. 8649, will hereinafter be referred to as "Mervin Joseph Polmer Suit."
The trial judge in his Written Reasons for Judgment ably summarized the factual situation giving rise to this litigation in the following manner:
"With the death of Leon Polmer in 1951 the ownership of Polmer Bros. partnership passed to Irvin and Mervin Polmer, each with a 24/70th interest; their only sister, Mrs. Estelle Polmer Rabin, 12/70ths; their nephew, Mrs. Rabin's only son, Philip Spencer 5/70ths; and their neice [sic], Louise Scheinberg, 5/70ths. Polmer Bros. consisted of 820 acres, the ancestral plantation home, and the Waubun Store, all located in Terrebonne Parish, and an additional 488 acres located in Lafourche Parish.
"Upon Leon Polmer's death the active management and control of Polmer Bros. was assumed solely by Mervin Polmer. This was necessitated by the poor health of his brother, Irvin, and the apparent disinterest of the other co-owners. In addition to managing the property of Polmer Bros., Mervin Polmer also managed a considerable amount of agricultural and mineral property owned jointly by his brother and himself, as well as agricultural and rental properties belonging solely to him. The management of these properties by Mervin Polmer continued until October 17, 1956 when he suffered a disabling paralytic stroke. This occurrence set in motion a succession of events leading to the formation of Ducros Plantation, Inc. to which the complete ownership, management, and control of these properties was ultimately transferred.
"These consolidated suits seek to avoid [sic] two conveyances of property by the co-owners to Ducros Plantation, Inc. on the ground that Philip Spencer utilized fraud and undue influence in bringing about these conveyances. It is alleged, in the alternative, that the stock option through which Philip Spencer and his mother secured the controlling interest in the corporation also is the result of fraud and should be invalidated. For the reasons that follow, judgment has been entered in favor of the plaintiffs on their alternative demands relating to the stock option allegedly approved on December 1, 1958 and ordering the return to the corporation of the thrity-two [sic] shares of stock purchased pursuant to the alleged option.
"In the months that followed Mervin Polmer's stroke the other co-owners learned that Mervin's administration of the business affairs of Polmer Bros. had not been the most businesslike. The Waubun Store had been continued by Mervin solely for the purpose of providing employment for persons who had been associated with the plantations, or their descendants, from the plantation's inception. Financially, the store was being operated at a loss. Additionally, it was later discovered that Mervin had borrowed sums from Polmer Bros. for personal reasons.
"In this moment of anxiety and frustration the co-owners, primarily through the influence of Philip Spencer, the only male descendent [sic] of the Polmers, were determined to restore the solvency of the family business. Spencer, an attorney, conceived the idea of forming a corporation to which all of the interests of the co-owners could be transferred in return for equal proportions of stock. The purpose of the corporation was ostensibly to centralize control of the properties in a single legal entity and thus eliminate the problems presented by ownership of the properties in indivision. In order to provide legal representation for Mervin, who was totally incapacitated physically from acting on his own behalf, Spencer succeeded in having Irvin *769 Polmer qualified as curator ad hoc for his brother.
"Ducros Plantation was legally incorporated in New Orleans on August 22, 1957 in the law office of Philip Spencer. All of the property to be held by the corporation, however, was located in Terrebonne and Lafourche Parishes. One hundred shares of common stock valued at $1,000.00 per share were authorized by the Articles of Incorporation of Ducros Plantation. On August 22, 1957 Louise Scheinberg's 5/70ths interest was purchased by the other co-owners and redistributed in equal proportions, resulting in total interests of 65/65ths. The property interests of the four remaining co-owners were transferred to the corporation in return for stock in equal proportion to their ownership interests; a total of 65 shares of the authorized 100 shares was therefore issued to the shareholders since 65 units of ownership were involved. The transfers of property were achieved in the form of two conveyances, one in 1957 and the other in 1958. Approval was duly petitioned for and obtained in the interdiction proceeding for the authority of Irvin to act on behalf of his brother, Mervin. Philip Spencer, from the inception of the corporation, headed it as president. The position of vice-president was held from time to time by either his mother or by Irvin Polmer. Irvin was retained by the corporation to act as General Manager for the properties of the corporation with the primary duty of collecting rental.
"A meeting of shareholders and directors was scheduled for December 1, 1958. At that time Spencer was President, Irvin Polmer Vice-President, and Mrs. Estelle Rabin, Secretary-Treasurer. A stock option resolution was purportedly offered at the Board of Directors meeting by Irvin Polmer and approved. This granted Philip Spencer the option to purchase up to 35 shares of the remaining 35 authorized but unissued shares of stock at $1,000.00 per share. Spencer exercised this option by purchasing 32 shares, and, together with his mother became a majority shareholder in the corporation, owning 49 of the outstanding shares to the 48 owned by his uncles.
"Following this development Irvin Polmer was discharged as general manager of Ducros Plantation for his alleged refusal to collect rent. The position of General Manager was thereafter assumed by Spencer who also continued to hold the presidency of the corporation. Spencer and his mother, by virtue of their majority control, approved a salary increase for Spencer from $2,250.00 per year to $12,000.00 per year. A `General Manager's home' was constructed near the Ducros home at a cost of approximately $30,500.00. The home was lavishly furnished with radio equipment for the alleged purpose of Spencer communicating from his New Orleans office to the properties at Schriever. The record reveals that Spencer, from adolesence [sic], has been a `ham' radio enthusiast. Checks purporting to be dividend payments to Irvin and Mervin Polmer were later sent to Irvin but were not cashed.
"Suit was filed by Irvin Polmer on January 25, 1961 and by Mervin Polmer, who had recovered from the dibilitating [sic] effects of his stroke, on January 30, 1961. The suits both sought to set aside the two conveyances of property to the corporation and the stock option through which Spencer acquired control of the properties of the co-owners and the revenues being produced therefrom. They pray that these conveyances and the stock option be invalidated and that the shares purchased by Spencer pursuant to the option be returned to the corporation. They further pray for an accounting of the fruits and renenues [sic] [of] the property produced subsequent to Spencer's purchase of the stock and ascendance to control of Ducros." (Written Reasons for Judgment, Record, pp. 57-61)
*770 Various declinatory, dilatory and peremptory exceptions were filed to both original petitions in each suit and to the amended petitions in each suit, all of which exceptions were overruled by the trial court. Judgment was rendered on the merits in favor of each of the respective plaintiffs on the alternative demand, setting aside the stock option allegedly approved by the Board of Directors of Ducros Plantation, Inc., on December 1, 1958, ordering defendant, Philip P. Spencer, to surrender and return to the defendant corporation the stock certificates representing the 32 shares of stock he purchased pursuant to the stock option plus any and all dividends received by him attributable thereto, and ordering Ducros Plantation, Inc., to return to defendant, Philip P. Spencer, whatever consideration, if any, he paid to the corporation for the purchase of the stock pursuant to the option. This judgment was based on the determination by the trial judge that the stock option was fraudulently obtained.
Defendants' appeals are directed first to the alleged error committed by the trial court in overruling the various exceptions and secondly, to the alleged error committed by the trial court in granting the respective plaintiffs' judgments on their respective alternative demands, essentially for the reason that the original allegations of the petitions constitute a judicial confession of the validity of the resolution granting the stock option, which judicial confession, it is contended, was attempted to be voided by amendment of the respective petitions but which judicial confessions, nevertheless, stand, as plaintiffs failed to prove the requisite error to avoid the judicial confessions. The final error complained of is the failure or refusal of the trial court to award defendant Spencer legal interest on the consideration allegedly paid for the stock acquired pursuant to the stock option. For the reasons hereinafter set forth, we affirm the judgment of the trial court.

EXCEPTIONS FILED IN IRVIN F. POLMER SUIT
On January 30, 1961, Philip P. Spencer filed a declinatory exception urging improper venue, contending that inasmuch as he personally owned no immovable property in Terrebonne Parish, the suit against him could not be brought in Terrebonne Parish, under Code of Civil Procedure Article 80, but would have to be filed against him in the parish of his domicile, i. e., Orleans Parish, under Code of Civil Procedure Article 42. This declinatory exception was properly overruled. The principal demand is properly classified as a mixed action[1] to: (1) annul two transfers of interest in immovable property on the grounds of fraud, illegality and error; and (2) recover the fruits and revenues derived from this property by requiring the defendant corporation to account therefor and for judgment for the amount shown to be due by this accounting against both the defendant corporation and defendant, Philip P. Spencer, in solido. The mandatory venue for this action against the defendant corporation is either Terrebonne Parish or Lafourche Parish, the two parishes in which the immovable property is located, Louisiana Code of Civil Procedure Article 80.[2] This mandatory venue, *771 is, therefore, the proper venue not only for the action to rescind the transfers of the immovable property, but also for the demand against the defendants, in solido, for a return of fruits and revenues derived from the property allegedly invalidly transferred.
In this regard we quote approvingly from a memorandum in opposition to the exceptions prepared by the late Dean Henry George McMahon, attached to and incorporated in the trial court's Written Reasons for Judgment (see Record, pp. 62, 63), as follows:
"Further, this argument completely overlooks and disregards the prayer in both petitions for a solidary judgment against both Ducros and Spencer for the fruits and revenues of the property in question found to be due after an accounting. This right to recover the fruits and revenues is not only incidental to, but is an integral part of, the right to rescind the transfers of immovable property because of the alleged fraudulent acts of Spencer. As the venue is admittedly proper for the action to recover the property itself, it is proper for the recovery of the fruits and revenues thereof. Cf. Code of Civil Procedure, arts. 3652 and 3656." (McMahon Memorandum, pp. 4, 5)
The next set of exceptions filed in this suit were declinatory, dilatory and peremptory exceptions filed by Ducros Plantation, Inc., on February 9, 1961. This one pleading contains four enumerated objections. The first of these is a dilatory exception urging improper joinder of parties defendant in the principal action. The basis for this exception is the erroneous contention that the only relief legally obtainable in the principal action would be a judgment solely against defendant, Ducros Plantation, Inc., with the result that the joinder of defendant, Philip P. Spencer, is improper. This exception was properly overruled by the trial court for the reason that the principal action, as previously stated, constitutes a mixed action which seeks judicial relief not only against the defendant corporation for recission of the transfers of immovable property, but also against both defendants, in solido, for a return of fruits and revenues. Philip P. Spencer was, therefore, properly joined as a party defendant in the principal action.
The second objection comprising this dilatory exception is the alleged improper cumulation of the alternative action with the principal action, the basis for this objection being that the alternative action constitutes actually a shareholder's secondary action, the venue for which must be the domicile of the defendant corporation, i. e., Orleans Parish, as provided by Louisiana Code of Civil Procedure Article 593.[3] The objection urges that since the alternative action was not brought in the proper venue, there is an improper cumulation of actions against Ducros Plantation, Inc., reprobated by Louisiana Code of Civil Procedure Article 462.[4]
*772 In overruling this exception, the trial judge incorporated the arguments proffered by Dean McMahon in opposition to this exception, the pertinent excerpts from which are reproduced below:
"While present counsel for the plaintiffs did not draft the original petitions, they fully appreciate the absolute necessity for presenting both of these demands, in the alternative, in the same suit. In fact, had they not been so presented, plaintiffs `would have been caught between the devil and the deep blue sea' and, as a practical matter, would have been utterly unable to have enforced judicially one or the other of these causes of action.
"Defendants contend here that the proper venue for the alternative demand is Orleans Parish. But plaintiffs' primary and alternative demands could not have been filed in the same suit in Orleans Parish, for clearly under the Code of Civil Procedure, art. 80, the mandatory venue for the primary demand is either Terrebonne or Lafourche Parish. Further, the two demands could not have been filed as separate suits. The filing of the alternative demand as a separate suit would necessarily recognize the validity of plaintiffs' ownership of the Ducros stock, and would have constituted a ratification of the `Act of Assignment' sought to be annulled through the primary demand. Cf. Farmers' Loan & Mortgage Co. v. Langley, 166 La. 251, 117 So. 137 (1928); Smith v. Hereford, 10 La.App. 320, 120 So. 531 (1929); and authorities cited in both cases. Further, the plaintiffs could not have waited until losing the suit containing only the primary demand before filing a second suit containing only the alternative demand, because the latter would then have been prescribed, under Civil Code, art. 3542.
"These points are mentioned here to demonstrate the fact that the only way and the only parish (excluding Lafourche Parish for the present) in which these demands can be presented for an adjudication is the manner in which they have been presented here. If these exceptions must be sustained because of procedural technicalities, then there is definitely something wrong with our procedural system. The remainder of this memorandum is devoted to the thesis that nothing in the civil procedure of Louisiana either requires or would justify such a miscarriage of justice." (McMahon Memorandum, pp. 2, 3emphasis supplied by the author)
The trial judge amplified the argument presented by Dean McMahon in the following manner:
"The reasoning outlined in Professor McMahon's memorandum and the authorities cited therein will not be restated. Based on the memorandum (which is attached to this opinion as an appendix) the Court is convinced that the demands asserted in these consolidated suits could have been presented in no other manner and in no other forum that Terrebonne or Lafourche Parish. It was an absolute necessity that both demands, in the alternative, be presented in the same suit and in the same parish. Had the demands not been so presented the plaintiffs would have been effectively thwarted from asserting one or the other of the two demands. The literal and highly techical [sic] construction of code articles suggested by the defendants cannot be accepted in view of the admonition of Art. 5051 of the Code of Civil Procedure: `The articles of this Code are to be constructed liberally, and with due regard for the fact that rules of procedure implement the substantive law and are not an end in themselves.'" *773 (Written Reasons for Judgment, Record, p. 63)
The argument made by the late Dean McMahon relative to the necessity for filing the principal and the alternative demands in the same suit in order to avoid the contention that plaintiff ratified the transfers of immovable property to the corporation in exchange for stock is well taken. Plaintiff feasibly could not litigate the claims made in his alternative demand as a separate suit unless and until there had been an adjudication of his claims in the principal action. If plaintiff had filed the claims set forth in the alternative demand as a separate action in Orleans Parish, he would of necessity be admitting the validity of the original transfers by him of immovable property to the corporation in exchange for stock thereof; that is, he would be ratifying the contracts or doing an "act inconsistent with an intention to disaffirm the contract," Farmers' Loan and Mortgage Company v. Langley, 166 La. 251, 117 So. 137, 141 (1928), thus waiving the fraud. If plaintiff delayed instituting the alternative demands until he obtained a final disposition of his claim for recission of the transfers of immovable property, he would run the risk of letting the alternative demands prescribe under Louisiana Civil Code Article 3542.[5]
Terrebonne Parish was a parish of proper venue for the alternative demand because it constitutes an action brought by plaintiff to assert an interest in immovable property, and accordingly, properly fits within the provisions of Louisiana Code of Civil Procedure Article 80. This point was succinctly made and cogently presented by the late Dean McMahon in that part of his memorandum demonstrating the distinct individual interest which plaintiff had separate and apart from a shareholder's secondary action, as follows:
"Both of these exceptions can be argued together because both are bottomed on the same legal contentions advanced by defendants that: the right sought to be enforced through the plaintiffs' alternative demand is one which belongs exclusively to the corporation and which can be enforced primarily only by it; that all shareholders have a common, secondary right to enforce this corporate right through the shareholders' derivative action if the corporate management failed to enforce it on the demand of one or more shareholders; that the venue of a shareholders' derivative action is the domicile of the corporation (in this case Orleans Parish); that in a close corporation all shareholders who do not join in such a suit must be joined as defendants; and that the only judgment which can be rendered is one in favor of the corporation and against the defendant obligor. (Plaintiffs do not disagree with the statement of the procedural rules relating to the shareholders' derivative action made in defendants' memorandum, as these are spelled out by our positive law. See Code of Civil Procedure, arts. 591-597, 611.)
"This is an ingenious and interesting argument. From plaintiffs' standpoint, it is also a rather dangerous argument due to its potential for confusing the issues because, under the facts alleged in these petitions, the corporation has been defrauded by Spencer's fraudulent acts; it does have a right to rescind the allegedly fraudulent stock option and the allegedly fraudulent issuance of stock thereunder; and its shareholders have a common right to rescind these transactions through the shareholders' derivative action if the corporation fails to do so.

*774 "However, what this argument completely overlooks is that a wrongful act, or acts, may give birth simultaneously to completely different rights in favor of completely different persons. The mere fact that the allegedly fraudulent acts of Spencer may have created a right of action in the corporation does not in any way prevent or affect the enforcement of the plaintiffs' rights of action resulting from these same acts.
"This is made abundantly clear by the New York case relied on so strongly by the defendants. In Solman [Selman] v. Allen [Sup.], 121 N.Y.S.2d 142, 145 (1953), the organ of the Supreme Court of New York said:
"It is possible, too, for the same facts to constitute a wrong to the corporation and also to the individual stockholders, so that a stockholder may elect whether to sue in the right of the corporation for the wrong done to it or in his own right for the wrong done to him. Kone [Kono] v. Rooth [Roeth], 237 App.Div. 252, 260 N.Y.S. 662; Hammer v. Werner, 239 App. Div. 38, 265 N.Y.S. 172; Blakeslee v. Sottile, 118 Misc. 513, 149 [194] N.Y. S. 752. But that does not mean that the stockholder can elect to sue in the right of the corporation or in his own right when the wrong alleged is a wrong to the corporation only. The right of election exists only where the facts constitute a wrong to the stockholder individually as well as a wrong to the corporation.'
"The mere fact that the relief prayed for alternatively here by the plaintiffs is identical with that which would be prayed for in the enforcement of the corporate right, either primarily by the corporation itself or secondarily by the shareholders, is completely irrelevant. The test is whether the suit asserts the plaintiffs' individual rights to redress wrongs done to them individually, or whether it seeks to assert a corporate right to redress wrongs done to the corporation. It is clear from the allegations of the petitions that plaintiffs are not complaining of wrongs done to the corporation and asserting a corporate right which is common to all shareholders secondarily. They are complaining only of wrongs done to the plaintiffs individually and asserting rights which are exclusively and peculiarly theirs, and which are not shared by other stockholders.
"What are the wrongs of which the plaintiffs complain in their petitions? The principal wrong of which they complain is that the alleged fraudulent acts of Spencer have deprived them of their right, as majority shareholders, to control the corporation. Irvin further complains that, as a result thereof, he has been wrongfully deprived of the office and salaries of general manager of the corporation, and of his right to the occupancy of the Ducros Plantation house rent-free for the balance of his life; and Mervin further complains that he has been deprived of his right, as a member of Irvin's household, to occupy the Ducros Plantation house for the balance of his life, or at least Irvin's life. Are these wrongs done to the corporation, of which it has a right to complain? Are these wrongs of which all of the shareholders have a common right to complain if the corporation does not? These questions are purely rhetorical as they supply their own answers; and these answers require a complete rejection of the defendants' argument on this point.
"Any remaining argument that the venue is improper with respect to plaintiffs' alternative demand may be disposed of quickly. The Code of Civil Procedure, Art. 80, provides that:
"The following actions shall be brought in the parish where the immovable property is situated:
"(1) An action to assert an interest in immovable property, or a right in, to, or against immovable property, except *775 as otherwise provided in Articles 72 and 2633; * * *.'
"(Articles 72 and 2633 relate to the enforcement of mortgages and privileges via ordinaria and via executiva, respectively, and have no relevance to this case.)
"Irvin is asserting a direct interest in immovable property situated in this parish, namely the right to occupy the Ducros Planatation house rent-free for the remainder of his life; and if plaintiffs are denied the relief prayed for in the primary demand, the only way that interest can be protected is through the granting of the relief prayed for in the alternative demand. Through their alternative demand both of the plaintiffs, as shareholders, are asserting a beneficial interest in the immovable property owned by the corporation, all of which is situated in Terrebonne and Lafourche Parishes. That interest will be quite valuable if the plaintiffs are granted the relief prayed for. Its value will be quite hypothetical and conjectural if that relief is not granted.
"It is true that in their alternative demand plaintiffs are not asserting a real right, but the code article does not require that the interest in immovable property asserted be based on a real right. That is made crystal clear by the language underscored above, followed by the language `OR a right in, to, or against immovable property'. The language just quoted covers the assertion of the real right. The language of the code article underscored above covers any interest in the immovable property other than one based on a real right, e. g., the enforcement by a lessee against a lessor, under a predial lease, of the former's right to the occupancy of the property for the unexpired term of the lease." (McMahon Memorandum, pp. 5-8-emphasis supplied by the author)
To the extent that this objection urging improper cumulation of actions is premised upon the alleged improper venue of the alternative demand, it was properly overruled for the additional reason that the defendant corporation, by filing the peremptory exception urging no cause of action prior to obtaining a court disposition of the declinatory exception urging improper venue, waived the objections to venue by making the general appearance resulting from the filing of the peremptory exception.
The basis for this ruling is succinctly stated by the late Dean McMahon in the following excerpt from his memorandum:
"On the trial of these exceptions, counsel for plaintiffs pointed out to the Court that all of the exceptions of improper venue filed by defendants (other than that filed by Spencer on January 30, 1961, and which was overruled the same day) had been waived. Defendants waived these exceptions when they incorporated them in the same pleading as their peremptory exceptions. Defendants admit that the prior procedural law effected such a waiver, but contend that all of this has been changed by the Code of Civil Procedure.
"Prior to 1960, the `general appearance' produced quite a different type of waiver of the declinatory exceptions. When the defendant coupled a declinatory exception with a peremptory exception, or pleaded the latter separately while the declinatory exception was still pending and without requiring its prior disposition, the defendant waived his declinatory exception. City Nat. Bank of Selma v. Walker, 130 La. 810, 58 So. 580 (1912); Dauterive v. Sternfels, 164 So. 349 (La.App. 1st Cir. 1935); and cases cited in both. However, here the waiver had a completely rational basis. Here, in pleading the exception of no cause of action, the defendants are affirmatively invoking the jurisdiction of the court. They are asking the court to render a judgment in their favor which would *776 have the same legal effect as one rendered after a trial of the case on its merits, and which would forever bar any subsequent suit based on the same cause of action.
"Since the rule that any general appearance to invoke affirmatively the jurisdiction of the court waives all objections to the court's jurisdiction (except that over subject matter, which cannot be waived) rests on a rational basis, there was no reason or need for the Law Institute to recommend that it be changed, and it was not changed. On the contrary, the Code of Civil Procedure, art. 7, is declaratory of the prior jurisprudential rule in providing that `a party makes a general appearance which subjects him to the jurisdiction of the court and impliedly waives all objections thereto when, either personally or through counsel, he seeks therein any relief other than' the relief which it enumerates below, none of which constitutes an affirmative invoking of the court's jurisdiction.
"Counsel seeks to escape from the application of this rule through a reliance on the last paragraph of this article reading:
"When a defendant files a declinatory exception which includes a prayer for the dismissal of the action on the ground that the court has no jurisdiction over him, the pleading of other objections therein, the filing of the dilatory exception therewith, or the filing of the peremptory exception or an answer therewith WHEN REQUIRED BY LAW, does not constitute a general appearance.' [Plaintiffs' emphasis.]
"This paragraph merely recognizes the three exceptions to the general rule which the law makes, and which are enunciated in other articles of the code: (1) there is no waiver of a declinatory exception when coupled with another, because Article 925 requires that all objections which can be raised through the declinatory exception be pleaded together; (2) there is no waiver of a declinatory exception when it is coupled with a dilatory exception, because Article 928 requires that the declinatory and dilatory exceptions be filed at the same time; and (3) there is no waiver of the declinatory exception incorporated in the answer or coupled therein with a peremptory exception in cases in city courts, justice of the peace courts, and `clerk's book' cases in district courts, because Articles 4892, 4922(2), 4941, 4971, and 5002 require all exceptions to be incorporated in the answer in these cases.
"The defendants here were not required by law to file their peremptory exceptions with their declinatory exceptions. They should have had the latter assigned for trial, or at least should have waited until they had been disposed of, before filing their peremptory exceptions. Not having done so, they waived their declinatory exceptions." (McMahon Memorandum, pp. 8, 10, 11emphasis supplied by the author)
This same result has been recognized to be applicable by the Third Circuit Court of Appeal in Texas Gas Transmission Corporation v. Gagnard, 223 So.2d 233, 237 (La. App. 3rd Cir. 1969), as evidenced by that sentence of that court's opinion and footnote three thereto, both of which are reproduced below:
"Nevertheless, the dilatory objection3
3 Unlike the declinatory objection, which is waived by any appearance, except those authorized by LSA-CCP Arts. 7, 928, see LSA-CCP Art. 925, last paragraph.
is not waived if pleaded prior to answer or default, unless not pleaded at the time of filing of a prior declinatory or dilatory exception. LSA-CCP Arts. 926, 928...."
(Texas Gas Transmission Corporation v. Gagnard, 223 So.2d at 237)
This same point is made in pleadings in Judicial Forms Annotated, Form No. 401, *777 Note 1, 10 West's LSA-Code of Civil Procedure, p. 262 (1963), as follows:
"CAVEAT: The declinatory and peremptory exceptions may not be pleaded together. If the peremptory exception is filed with the declinatory exception or filed prior to a ruling of the trial court on the declinatory exception, the latter is waived." (Emphasis supplied by the authors)
This same Caveat appears as Note 1 to Form 404, 10 West's LSA-Code of Civil Procedure, p. 264.
The third enumerated objection contained in the February 9, 1961, exceptions by Ducros Plantation, Inc., is the declinatory exception urging improper venue for the alternative action. For the reasons set forth above in connection with the disposition of the dilatory exception urging improper cumulation of actions, this declinatory exception was likewise properly overruled. Moreover, this declinatory exception was waived by the filing of the peremptory exception by defendant, which constituted a general appearance and a waiver of objections to the jurisdiction of the court. Defendant could have avoided this waiver by waiting for a court disposition of the declinatory exception prior to making a general appearance by virtue of its filing a peremptory exception.
The last enumerated objection of Ducros Plantation, Inc., contained in the February 9, 1961, pleading is the peremptory exception urging that the alternative action states no cause of action for the reason that plaintiff seeks to enforce the rights of a corporation but does not allege that the corporation has refused to enforce its rights or that the other shareholders have refused or failed to join as plaintiffs. This peremptory exception was properly overruled by the trial court for the reasons set forth in the McMahon memorandum, incorporated above, explaining the distinct individual cause of action which plaintiff has and the fact that plaintiff did not purport to file a shareholder's secondary action. (McMahon Memorandum, pp. 5-8)
On March 24, 1961, defendant, Philip P. Spencer, filed a single pleading entitled "Dilatory, Declinatory and Peremptory Exceptions on Behalf of Philip P. Spencer." This pleading contains five enumerated objections. The first of these is a renewal of defendant Spencer's declinatory exception urging improper venue. The second enumerated objection is a peremptory exception urging no cause of action for cancellation of the stock option because no tender was made by plaintiff to him for the amount allegedly paid to defendant corporation for purchase of the stock. The third enumerated objection is a peremptory exception urging no right of action for the reason that the alternative demand must be classified as a shareholder's secondary action. The fourth enumerated objection is a dilatory exception urging improper joinder of defendants in the principal demand for the reason that defendant Spencer owned no land in Terrebonne Parish and no judgment could be rendered in the principal demand against him. The fifth enumerated objection was a dilatory exception urging improper cumulation of actions, again for the reason of alleged improper venue as to the alternative demand. The sixth enumerated objection is a peremptory exception urging liberative prescription of the alternative action to cancel the stock option.
All of the objections set forth in the form of dilatory exceptions and the declinatory exception were properly overruled by the trial court for the reason that they were waived when not incorporated in defendant Spencer's originally-filed declinatory exception on January 30, 1961. Louisiana Code of Civil Procedure Article 928 requires that all objections sought to be raised by a declinatory exception and all objections sought to be raised by a dilatory exception must be filed at the same time.
The peremptory exception urging no cause of action due to the lack of tender *778 has been abandoned by the defendant-appellant, Philip P. Spencer, as this exception has not been argued either in brief or in oral argument. The same is true for the peremptory exception urging prescription. The final objection presented by the peremptory exception, the urging of no right of action, has been properly disposed of in connection with the discussion above pertaining to the peremptory exception urging no cause of action filed by Ducros Plantation, Inc.
Plaintiff, with leave of court, amended his petition on September 23, 1965. Following this amendment, defendant, Philip P. Spencer, filed dilatory, declinatory and peremptory exceptions to the amended petition, which pleading enumerates seven objections.
That part of this opinion above disposes of each of these objections, which were analogous to those previously presented by this defendant or by defendant-exceptor, Ducros Plantation, Inc.
Ducros Plantation, Inc., also filed on October 9, 1965, various dilatory, declinatory and peremptory exceptions to plaintiff's amended petition. Again, these exceptions renew the objections previously made by this defendant to the original petition, all of which were properly overruled by the trial court for the reasons set forth previously in this opinion with regard to disposition of comparable exceptions made to the original petition.

EXCEPTIONS FILED IN MERVIN JOSEPH POLMER SUIT
On February 16, 1961, defendant, Philip P. Spencer, filed a declinatory exception urging improper venue as to both the principal demand and the alternative demand. The basis for this exception are the same as those presented in the Irvin F. Polmer Suit, and the disposition of comparable exceptions in that suit equally applies herein.
Defendant, Ducros Plantation, Inc., likewise filed exceptions on February 16, 1961, in a single pleading entitled "Dilatory, Declinatory and Peremptory Exceptions on Behalf of Ducros Plantation, Inc." This pleading contains five enumerated objections, the first four of which are identical to the objections set forth in the February 9, 1961, exceptions filed by Ducros Plantation, Inc., in the Irvin F. Polmer Suit. The disposition of these four objections in that suit is likewise applicable herein. The fifth objection contained in the February 16, 1961, pleading is a dilatory exception urging nonjoinder of a necessary party, in that plaintiff failed to name his former curator a party defendant. This objection was overruled by the trial court and has been abandoned by defendant-exceptor-appellant, as evidenced by the absence of any argument, either oral or in brief, in support of this objection.
Following the amendment of plaintiff's petition on September 23, 1965, defendant, Philip P. Spencer, filed on October 9, 1965, a pleading entitled "Dilatory, Declinatory and Peremptory Exceptions" to the amended petition. This pleading contains the identical seven objections which were set forth in the comparable pleading by defendant Spencer in the Irvin F. Polmer Suit. The disposition made herein of these exceptions in the Irvin F. Polmer Suit is likewise applicable to these exceptions.
Similarly, on October 9, 1965, defendant-exceptor, Ducros Plantation, Inc., filed a pleading entitled "Dilatory, Declinatory and Peremptory Exceptions on behalf of Ducros Plantation, Inc.," to the amended petition. This pleading contains the same four enumerated exceptions or objections as were filed by defendant corporation to the amended petition in the Irvin F. Polmer Suit. The disposition of those exceptions in that suit likewise applies to these exceptions.

ON THE MERITS
Defendants-appellants assign as their sole specification of error on the merits the finding by the trial court that no stock option resolution was adopted by the defendant corporation. A review of *779 the argument on this specification of error, however, shows that it is directed solely to the legal question of whether plaintiffs are bound by a judicial confession contained in their respective original petitions to the effect that such a resolution was adopted.
Counsel for appellants contends that although plaintiffs could amend their respective petitions to delete the alleged judicial confession, they were likewise required to prove at the trial that the alleged judicial confession was made through an error or errors of fact; otherwise, the judicial confession could not properly be revoked by virtue of the amendment of the respective petitions.
In essence, the argument proffered by counsel for defendants-appellants is that while a litigant may amend his petition to alter an allegation of fact, nevertheless, in order to avoid the effect of a binding, irrevocable judicial confession, the litigant, who has properly amended his pleading, must prove that the original allegation of fact made by him was made through an error of fact, and in default of such proof at the trial, the original allegation, even though purportedly changed by amendment, nevertheless, operates as a judicial confession.
This argument is without merit. A similar argument was made in Thomas v. Leonard Truck Lines, 7 So.2d 753 (La. App. 2nd Cir. 1942), but was rejected in the following manner:
"Plaintiff originally alleged that both vehicles were going north. After joinder of issue he tendered an amendment wherein he alleged, as is true, that the vehicles were going south. Over objection of defendant's counsel, the amendment was allowed. Defendant moved to strike out the amendment and filed a plea of estoppel predicated upon the proposition that a litigant is irrevocably bound by his judicial admissions. Both pleas were properly overruled. Testimony under the pleadings as amended was objected to, but admitted.
"Motions to strike are now banned in this court. State ex rel. Sutton et al. v. Caldwell, Mayor, et al., 195 La. 507, 197 So. 214; Perez, District Attorney, v. Meraux, Judge, 195 La. 987, 197 So. 683.
"Amendment of a petition, even after issue is joined, is permissible if thereby the substance of the demand is not altered. Code of Practice Article 419. The amendment in this case in no wise altered the substance of the original demand. The demand is for damages resulting from the alleged negligence of defendant's driver. The amendment was designed to correct an erroneous allegation of fact, which if not corrected, would have militated against admissibility of evidence to prove the true facts.
"In judicial proceedings amendments are favored. The tendency now is to pursue a liberal rather than a strict attitude toward them. To do so prevents a multiplicity of suits, abhorred by courts. It is also true that allowance or refusal of amendments lies largely within the sound legal discretion of the court and its action thereon will not be disturbed unless manifest injustice will likely result.
"Since the amendment to the petition was properly allowed, the plea of estoppel perforce must fall. It has no basis upon which to stand. In addition to this, a pleader is not estopped by judicial allegations which have neither deceived nor damaged anyone. Sanderson v. Frost, 198 La. 295, 3 So.2d 626." (Thomas v. Leonard Truck Lines, 7 So.2d at 756 emphasis added)
The record is completely devoid of any evidence establishing how the amendment either deceived or damaged defendants-appellants so as to justify imposition of estoppel by judicial allegations. Defendants-appellants had ample opportunity to prepare for the trial, which was held more than two years after the amended petition in each of these suits was filed, pursuant to leave of court.
*780 Appellants' last complaint is that the trial judge erred in failing or refusing to condemn the defendant corporation to pay to defendant, Philip P. Spencer, legal interest on the consideration which he allegedly paid to the corporation in connection with the purchase of the additional shares of stock pursuant to the assailed stock option. This contention is without merit. Clearly, Philip P. Spencer cannot seek to enrich himself by requiring the defendant corporation to pay him legal interest on the sums which he allegedly paid to the corporation for the additional stock, since it has been judicially determined that this stock was obtained by fraud. In essence, the judgment of the trial court restores the parties to the status quo which they enjoyed prior to the attempted perpetration of the fraud. In this regard, the instant case is similar to Elite Homes, Inc. v. Herrmann, 242 So.2d 614 (La.App.4th Cir. 1970), application not considered, 257 La. 543, 242 So.2d 884, writ refused, 257 La. 984, 244 So.2d 857, in which case the Fourth Circuit Court of Appeal refused to award legal interest on a sum of money which the court awarded to the obligor as an offset or reduction against the amount owed to the obligee. The law will not countenance the enrichment of a perpetrator of a fraud by requiring the defrauded party to pay interest to the perpetrator of the fraud.

JUDGMENT IN NO. 8648.
For the foregoing reasons, the judgment appealed from is affirmed, with all costs of this appeal assessed to defendants-appellants.
Affirmed.

JUDGMENT IN NO. 8649.
For the reasons set forth above, the judgment appealed from herein is affirmed, with all costs of this appeal assessed to defendants-appellants.
Affirmed.
NOTES
[1] A "mixed action" is defined in the third paragraph of Louisiana Code of Civil Procedure Article 422 as follows:

"A mixed action is one brought to enforce both rights in, to, or upon immovable property, and a related obligation against the owner, claimant, or possessor thereof."
[2] "The following actions shall be brought in the parish where the immovable property is situated:

"(1) An action to assert an interest in immovable property, or a right in, to, or against immovable property, except as otherwise provided in Articles 72 and 2633; and
"(2) An action to partition immovable property, except as otherwise provided in Articles 81, 82, and 83.
"If the immovable property, consisting of one or more tracts, is situated in more than one parish, the action may be brought in any of these parishes." (Louisiana Code of Civil Procedure Article 80)
[3] "A secondary action of a shareholder or member to enforce a right of a corporation or unincorporated association shall be brought in the parish of proper venue as to the corporation or unincorporated association. All other class actions to enforce a right of all members of the class shall be brought in a parish of proper venue as to the defendant.

"A class action to enforce a right against all members of the class shall be brought in a parish of proper venue as to any member made a defendant.
"`Proper venue' as used in this article means the venue provided in Article 42." (Louisiana Code of Civil Procedure Article 593)
[4] "A plaintiff may cumulate against the same defendant two or more actions even though based on different grounds, if:

"(1) Each of the actions cumulated is within the jurisdiction of the court and is brought in the proper venue; and
"(2) All of the actions cumulated are mutually consistent and employ the same form of procedure.
"Except as otherwise provided in Article 3657, inconsistent or mutually exclusive actions may be cumulated in the same judicial demand if pleaded in the alternative." (Louisiana Code of Civil Procedure Article 462)
[5] This article provides in pertinent part the following:

"The following actions are prescribed by five years:
"That for the nullity or rescission of contracts, testaments or other acts...."